LAWANDA PARCHMENT, Executrix of the Estate of ROY EDWARD PARCHMENT,
Plaintiff v. BOBBY LEE GARNER, and NORFOLK SOUTHERN RAILWAY
COMPANY, Defendants

No. COA98-1531

(Filed 19 October 1999)

**1. Railroads— grade crossing accident—contributory negli-
gence—train sounded warning bell and horn**

In a wrongful death action involving a train-automobile grade
crossing accident, the trial court did not err by granting summary
judgment in favor of defendant Norfolk Southern Railway
Company because although the evidence tends to show there
were no automatic warning mechanisms and decedent's view of
the track was obstructed by trees and other vegetation, decedent
was contributorily negligent since there is no plausible explana-
tion why decedent would have been prevented from hearing
the train's warning bell and horn, and decedent violated N.C.G.S.
§ 20-142.1(a)(3) by failing to stop within 50 feet of the crossing to
determine whether it was safe to proceed across the track.

**2. Railroads— grade crossing accident—no automatic warn-
ing mechanisms—not gross negligence**

In a wrongful death action involving a train-automobile grade
crossing accident, the trial court did not err by determining that
defendant Norfolk Southern Railway Company was not grossly
negligent in maintaining and signaling the rural crossing when
there were no automatic warning mechanisms because north-
west-bound motorists within 70 feet of the crossing could clearly
see 167 feet down the track; and when the accident occurred, the
train was burning its headlights, traveling at a maximum speed of
35 mph, and had been sounding its horn and ringing its bell con-
tinuously for a distance of 1,970 feet.

Appeal by plaintiff from judgment entered 13 October 1998 by
Judge Michael E. Beale in Davie County Superior Court. Heard in the
Court of Appeals 9 September 1999.

*Long, Parker & Warren, P.A., by Steve Warren, for plaintiff-
appellant.*

*Brooks, Pierce, McLendon, Humphrey & Leonard, L.L.P., by L.P.
McLendon, Jr., Reid L. Phillips, and James C. Adams, II, for
defendants-appellees.*

TIMMONS-GOODSON, Judge.

The present appeal arises out of a wrongful death action brought by the executrix of the estate of Roy Edward Parchment ("Parchment"), alleging that Norfolk Southern Railway Company ("Norfolk") and its engineer, Bobby Lee Garner, negligently caused Parchment's death. After a thorough examination of the record, we affirm the order of the trial court.

Plaintiff Lawanda Parchment is the executrix of Parchment's estate. Parchment sustained fatal injuries when the automobile he was driving collided with a locomotive owned by Norfolk and engineered by Garner. The accident occurred at the Cooleemee Junction Grade Crossing ("the Crossing") on State Road 1116 ("SR 1116") in Davie County, North Carolina. Two tracks, a main line track and a spur track, intersected SR 1116 at the Crossing, and motorists traveling northwest on SR 1116 reached the spur track before reaching the main line. At the time of the accident, there were no automatic gates or flashing lights to signal a train's approach, but motorists traveling northwest on SR 1116 encountered advance warning signs at 780 feet from the Crossing, advance pavement markings at 429 feet from the Crossing, and a crossbucks sign at the Crossing.

On the afternoon of 27 September 1993, Garner maneuvered a Norfolk locomotive along the main line track toward the Crossing at a speed of 30 to 35 miles per hour (mph). William D. Shelton, the conductor, and Kelly F. Spainhour, the brakeman, were also present on the train at the time. When the train reached the whistle post located 1,970 feet from the Crossing, Garner began sounding the horn and ringing the bell, which he continued to do until after the accident occurred. At approximately 2:17 p.m., the locomotive traveled over the Crossing. Parchment, who was driving toward the Crossing in a northwesterly direction on SR 1116, struck the side of the locomotive at a speed of 30 mph. Parchment received mortal injuries as a result of the collision.

In her deposition, plaintiff testified regarding visibility conditions at the Crossing. Plaintiff stated that motorists traveling northwest on SR 1116 were unable to see an approaching train because of the trees, shrubbery and other vegetation occupying the 40-foot right-of-way adjacent to the railroad track. As to the manner by which motorists negotiated the Crossing, plaintiff testified as follows:

> [When you approach the crossing,] [y]ou couldn't see. You would go till you could roll and look, roll and look, roll and look till you

were on the side [spur] track. And you'd roll and look. You had to. . . . . [Y]our front of your vehicle was right at the side [spur] track before you could see, and you'd roll and look, roll and look. . . . So you didn't stop completely. If you stopped completely back, you could not see.

Plaintiff's expert, K. W. Heathington, submitted a report characterizing the Crossing as very hazardous due to the severe limitations on sight distances caused by the trees and vegetation. Heathington reported that with a train traveling at a maximum speed of 35 mph, sight deficiencies in the southeast quadrant, the area from which Parchment was traveling, were: (1) 321 feet (77.7%) for a vehicle approaching at 55 mph on SR 1116; (2) 266 feet (73.3%) for an approach speed of 40 mph; (3) 248 feet (71.3%) for an approach speed of 30 mph; (4) 246 feet (67.8%) for an approach speed of 20 mph; and (5) 341 feet (67.1%) for an approach speed of 10 mph. Heathington determined that the sight distance restrictions in all four quadrants "pose[d] critical safety problems for a reasonable and prudent motor vehicle operator using the crossing on SR 1116 (Junction Road)." He further concluded that ignoring the safety hazards caused by the visibility restrictions was "a willful and wanton disregard for the safety of the traveling public using the SR 1116 (Junction Road) crossing."

Plaintiff, in her capacity as the executrix of Parchment's estate, filed a lawsuit against Norfolk and Garner alleging that they negligently caused the accident resulting in Parchment's death. Following extensive discovery, Norfolk and Garner filed a motion for summary judgment on all issues raised in plaintiff's complaint. The trial court held a hearing on the motion on 21 September 1998, at which time plaintiff voluntarily dismissed her claims against Garner with prejudice. After hearing oral arguments and reviewing the evidence of record, the court entered an order granting summary judgment to Norfolk. As the basis for its decision, the court concluded that as a matter of law, Parchment was contributorily negligent and Norfolk was not liable to plaintiff for negligence or gross negligence. Plaintiff filed timely notice of appeal.

---

[1] We consider first plaintiff's argument that the court erred in concluding that Parchment was contributorily negligent as a matter of law. Plaintiff contends that since there was evidence tending to show that Parchment was unable to see the train until it was too late to avoid a collision, the issue of his negligence was one for the jury to decide. On the facts of this case, we must disagree.

The question before the trial court on a motion for summary judgment "is whether the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that a party is entitled to judgment as a matter of law." *DiOrio v. Penny*, 331 N.C. 726, 728, 417 S.E.2d 457, 459 (1992). Although summary judgment is seldom fitting in cases involving questions of negligence and contributory negligence, summary judgment will be awarded to a defendant if "the evidence is uncontroverted that [the plaintiff] failed to use ordinary care and that want of ordinary care was at least one of the proximate causes of injury." *Id.*

Our courts have encountered considerable difficulty in enunciating bright-line rules to govern liability in train-automobile grade crossing accidents. Consequently, each case is evaluated on its own facts. *Jarrett v. R.R.*, 254 N.C. 493, 495, 119 S.E.2d 383, 384 (1961).

> Many cases involving injuries due to collision between motor vehicles and trains at grade crossings have found their way to this Court. No good can be obtained from attempting to analyze the close distinctions drawn in the decision of these cases, for, as was said in *Cole v. Koonce*, [214 N.C. 188, 198 S.E. 637 (1938)] each case must stand upon its own bottom, and be governed by the controlling facts there appearing.

*Hampton v. Hawkins*, 219 N.C. 205, 209, 13 S.E.2d 227, 229 (1941). Nevertheless, the law charges motor vehicle operators with a continuing obligation to look and listen before entering a railroad crossing. *Jernigan v. R.R. Co.*, 275 N.C. 277, 167 S.E.2d 269 (1969). Accordingly, "when a diligent use of one's senses of sight and hearing discloses danger in time to avoid it, failure to take the proper precaution constitutes negligence." *Id.* at 281, 167 S.E.2d at 272.

Section 20-142.1 of our General Statutes sets forth the responsibilities of a motorist when proceeding over a railroad crossing:

> (a) Whenever any person driving a vehicle approaches a railroad grade crossing under any of the circumstances stated in this section, the driver of the vehicle shall stop within 50 feet, but not less than 15 feet from the nearest rail of the railroad and shall not proceed until he can do so safely. These requirements apply when:
>
> . . .

(3) A railroad train approaching within approximately 1500 feet of the highway crossing emits a signal audible from that distance, and the railroad train is an immediate hazard because of its speed or nearness to the crossing[.]

N.C. Gen. Stat. § 20-142.1(a)(3) (1993). While failure to come to a complete stop as required by this section does not constitute negligence *per se*, it is a factor to be considered in determining whether a motorist acted negligently. *White v. R.R.*, 216 N.C. 79, 3 S.E.2d 310 (1939); *Weston v. R.R.*, 194 N.C. 210, 139 S.E. 237 (1927).

Viewing the evidence in the light most favorable to plaintiff and giving plaintiff the benefit of every inference reasonably drawn from the evidence, we hold that the trial court committed no error in concluding that Parchment's own negligence contributed to his injuries and, thus, barred recovery on his negligence claim. The evidence shows that Garner, the engineer, signaled the train's approach by sounding the horn and ringing the bell. Garner began issuing the warning sounds at the whistle post located 1,970 feet from the Crossing and continued to do so until the train traveled over the Crossing. Although plaintiff presented evidence tending to show that the view of the track was obstructed by trees and other vegetation, plaintiff has offered no plausible explanation as to why Parchment would have been prevented from hearing the warning bell and horn. Furthermore, the evidence demonstrates that in violation of section 20-142.1(a)(3), Parchment failed to stop within 50 feet of the Crossing to determine whether it was safe to proceed across the track. The report submitted by plaintiff's expert indicates that from the southeast quadrant at a distance of 70 feet from the Crossing, a motorist could clearly see 167 feet down the track. Thus, had Parchment stopped as required by section 20-142.1(a)(3), there is no reason why he would not have been able to see the train in time to avoid a collision. The trial court was, therefore, correct in entering summary judgment for Norfolk on the issue of Parchment's negligence, and plaintiff's argument is overruled.

[2] Plaintiff further argues that even if the trial court properly determined that Parchment was contributorily negligent, the same did not bar his recovery, because Norfolk was grossly negligent in maintaining and signaling the Crossing. Again, we must disagree.

As a principle of law, it is well established that contributory negligence will not prohibit recovery where the defendant has engaged in willful or wanton conduct, *Sorrells v. M.Y.B. Hospitality Ventures*

*of Asheville,* 332 N.C. 645, 423 S.E.2d 72 (1992), which is often referred to as "gross negligence," *Cissell v. Glover Landscape Supply, Inc.,* 126 N.C. App. 667, 486 S.E.2d 472 (1997), *rev'd on other grounds,* 348 N.C. 67, 497 S.E.2d 283 (1998). Plaintiff contends that genuine issues of fact remain as to whether Norfolk was grossly negligent, because the vegetation obstructing the Crossing created an ultrahazardous condition requiring the use of automatic warning mechanisms.

In North Carolina, railway companies have a duty to warn motor vehicle operators, in a manner " 'appropriate to the location and circumstances, that a railroad crossing lies ahead.' " *Collins v. CSX Transportation,* 114 N.C. App. 14, 18, 441 S.E.2d 150, 152 (1994) (quoting *Cox v. Gallamore,* 267 N.C. 537, 541, 148 S.E.2d 616, 619 (1966)). Where the conditions at or near the crossing are such as to render it "ultrahazardous" or "extrahazardous," our law may require the use of mechanical warning devices. *Id.* Generally, however, such warnings are required only at crossings so treacherous that a reasonably prudent person could not safely use them without extraordinary protective measures. *Id.* Nevertheless, "the failure to signalize an 'extrahazardous' crossing properly does not automatically amount to gross negligence. Instead, the fact that a crossing is extrahazardous ordinarily dictates only the necessity for certain types of warnings." *Id.* at 22, 441 S.E.2d at 154. The key question is whether the railroad company exercised due care under the circumstances. *Id.* at 22, 441 S.E.2d at 155.

The evidence, examined in the light most favorable to plaintiff, tends to show that the collision between Parchment's vehicle and Norfolk's locomotive occurred at a rural railroad crossing on an afternoon when weather conditions were dry and partly cloudy. The Crossing consisted of two parallel tracks—a main line and a spur track—and was marked only by a crossbucks sign. Trees and other vegetation growing in the right-of-way adjacent to the tracks partially obstructed the view of approaching motorists; however, northwest-bound motorists within 70 feet of the Crossing could clearly see 167 feet down the track. When the accident occurred, the train was burning its headlights, traveling at a maximum speed of 35 mph, and had been sounding its horn and ringing its bell continuously for a distance of 1,970 feet. Following the accident, plaintiff's expert examined the Crossing and determined that the conditions at the Crossing rendered it "ultrahazardous" and that Norfolk was grossly negligent in failing to utilize automatic warning devices.

PARCHMENT v. GARNER

[135 N.C. App. 312 (1999)]

The facts of this case are strikingly similar to those of *Collins*, 114 N.C. App. 14, 441 S.E.2d 150. In that case, the plaintiff was injured when his vehicle collided with a train at a rural railroad crossing marked only by a crossbucks sign. The plaintiff argued that foliage growing near the railroad track created visibility restrictions rendering the crossing extrahazardous. Thus, it was the plaintiff's position that the railroad company's failure to use mechanical warning devices at the crossing constituted gross negligence. The evidence presented at trial tended to show that when the accident occurred, "[t]he train was burning its headlights, traveling at the maximum speed limit of 70 m.p.h., and . . . failed to sound its horn." *Id.* at 23, 441 S.E.2d at 155. The evidence further showed that in spite of the foliage, "a motorist within 75' of the crossing had essentially an unobstructed view down the tracks." *Id.* In light of these facts, this Court held that assuming the crossing was ultrahazardous, the "defendant's failure to implement more extensive signalization did not rise to the level of 'gross negligence.' " *Id.* at 24, 441 S.E.2d at 155. We stated that the circumstances of the case "[were] more analogous to a typical rural grade crossing, and [were] notably similar to other cases wherein only the issue of 'ordinary' negligence was submitted." *Id.* at 24, 441 S.E.2d at 156.

Accordingly, pursuant to our ruling in *Collins*, 114 N.C. App. 14, 441 S.E.2d 150, we hold that assuming *arguendo* the Crossing at which the accident occurred was ultrahazardous, plaintiff has failed to show that the lack of automatic signaling devices constituted gross negligence on the part of Norfolk. Therefore, plaintiff's assignment of error fails.

For the foregoing reasons, the order of summary judgment in favor of Norfolk is affirmed.

AFFIRMED.

Judges GREENE and HORTON concur.