BETTY S. BENTON (NOW ABSHER), ADMINISTRATRIX OF THE ESTATE OF JAMES LEE POPWELL, DECEASED, PLAINTIFF v. HILLCREST FOODS, INC.; WAFFLE HOUSE, INC.; DANIEL HERNANDEZ, JR.; PATSY LEFLER JONES; AND WAFFLE HOUSE HOLDING COMPANY, INC., DEFENDANTS

ARTHUR FRANKLIN BROWN, PLAINTIFF v. HILLCREST FOODS, INC.; WAFFLE HOUSE, INC.; DANIEL HERNANDEZ, JR.; PATSY LEFLER JONES; AND WAFFLE HOUSE HOLDING COMPANY, INC., DEFENDANTS

No. COA98-936

(Filed 21 December 1999)

## 1. Negligence— contributory—initiation of confrontation

In an action against a restaurant owner and franchisor for wrongful death and personal injuries based on a fight occurring at the restaurant, the trial court did not err in denying plaintiffs' motion for directed verdict and judgment notwithstanding the verdict on the issue of contributory negligence because plaintiffs failed to use ordinary care for their own safety, as evidenced by the facts that: (1) plaintiffs provoked the Mexican men, who shot them, by referring to them as "wetbacks"; (2) plaintiffs were aware that defendant Jones and the Mexican men were about to reenter the restaurant with loaded guns, yet plaintiffs refused to leave through the back door when restaurant employees told them they could do so to avoid a confrontation; and (3) plaintiffs initiated confrontation with the Mexican men, even though plaintiffs had been informed that the police would arrive shortly to resolve the situation.

## 2. Negligence— contributory—instructions—intentional act

In an action filed for wrongful death and personal injuries based on a fight occurring at a Waffle House restaurant, the trial court did not err by submitting the issue of contributory negligence to the jury or by denying plaintiffs' motion for a new trial on the issue of contributory negligence even though plaintiffs' acts of initiating the physical confrontation were intentional and deliberate rather than negligent.

BENTON v. HILLCREST FOODS, INC.

[136 N.C. App. 42 (1999)]

**3. Appeal and Error— preservation of issues—failure to cite authority—abandonment of issue**

Although plaintiffs contend the trial court erred in failing to instruct the jury on the doctrine of concurring acts of negligence in regard to its contributory negligence instruction, plaintiffs do not cite any legal authority nor do they make an argument for extension of the law in support of their argument as required by N.C. R. App. P. 28(b)(5), and therefore, this issue is abandoned.

**4. Negligence— contributory—self-defense—instruction not required**

In an action filed for wrongful death and personal injuries based on a fight occurring at a Waffle House restaurant, the trial court did not err by failing to instruct the jury on the issue of self-defense in regard to its contributory negligence instruction because there is no support in North Carolina law for the proposition that a plaintiff is entitled to an instruction on self-defense in order to rebut the affirmative defense of contributory negligence.

**5. Damages and Remedies— punitives—willful or wanton conduct not shown**

In an action filed for wrongful death and personal injuries based on a fight occurring at a Waffle House restaurant, the trial court did not err by granting defendant restaurant owner's motion for directed verdict as to the punitive damages claim based on willful or wanton negligence because: (1) willful or wanton conduct and gross negligence are the same standard of negligence under N.C.G.S. § 28A-18-2, and plaintiffs failed to show willful or wanton conduct; and (2) taken in the light most favorable to plaintiffs, the evidence was insufficient as a matter of law to justify a verdict for plaintiffs when the evidence presented only showed that no security measures such as locks or guards were in place to protect customers at the restaurant and the restaurant was located in a high crime area.

**6. Negligence— contributory—recovery barred**

In an action filed for wrongful death and personal injuries based on a fight occurring at a Waffle House restaurant, the trial court did not err by granting defendants Waffle House, Inc., and Waffle House Holding Company, Inc.'s motion for directed verdict as to all claims because even if plaintiffs could show negligence

BENTON v. HILLCREST FOODS, INC.

[136 N.C. App. 42 (1999)]

by either of these defendants, plaintiffs would have been barred from recovery based on their contributory negligence.

**7. Trials— order of jury arguments**

In an action filed for wrongful death and personal injuries based on a fight occurring at a Waffle House restaurant, the trial court did not err by denying plaintiffs' motion for the last jury argument on the ground that defendants in effect introduced evidence by marking exhibits and questioning witnesses because the order of the jury arguments is in the discretion of the trial court and the trial court's decision is final.

**8. Evidence— subsequent remedial measures**

In an action filed for wrongful death and personal injuries based on a fight occurring at a Waffle House restaurant, the trial court did not abuse its discretion by excluding evidence of subsequent remedial measures in the form of written instructions to security guards to lock the door in the event of a disturbance in the restaurant parking lot because: (1) N.C.G.S. § 8C-1, Rule 407 provides that evidence of subsequent remedial measures is not admissible to prove negligence or culpable conduct in connection with the event; (2) the exception to Rule 407, which would allow the evidence of subsequent measures, is not met since defendants' testimony that there is no reason to lock the door refers to the perceived lack of necessity to do so and does not address the feasibility of locking the door; and (3) Rule 403 precludes its admission since the proffered evidence is of slight probative value and presents a danger that the jury would be unfairly prejudiced against defendant for not having taken a remedial measure earlier.

**9. Evidence— expert—area crime data—exclusion**

In an action filed for wrongful death and personal injuries based on a fight occurring at a Waffle House restaurant, the trial court did not err by excluding the analysis of 1988-91 data from a crime analysis expert because: (1) plaintiffs were permitted to demonstrate defendants' knowledge of the need to provide adequate security measures to protect its business invitees; (2) in light of the fact that more recent data had been admitted, the trial court could have determined that data pertaining to criminal activity from 1988 to 1991 was merely cumulative; and (3) even if the trial court erred, the error was harmless in light of the fact that plaintiffs were found contributorily negligent and additional

crime data would not have affected the jury decision as to plaintiffs' negligence.

**10. Witnesses— expert—failure to qualify—no pre-trial identification—similar testimony**

In an action filed for wrongful death and personal injuries based on a fight occurring at a Waffle House restaurant, the trial court did not abuse its discretion by failing to qualify a witness as an expert in the field of security for restaurants and in excluding his opinions because: (1) plaintiffs violated a pre-trial discovery order by failing to identify the witness as an expert; and (2) plaintiffs retained another expert witness to testify as to the same security issues at the restaurant, and thus, the additional testimony would have been cumulative.

Appeal by plaintiffs and defendants from judgment entered 9 February 1998 by Judge Claude S. Sitton in Superior Court, Mecklenburg County. Heard in the Court of Appeals 31 March 1999.

*Richard F. Harris, III for plaintiffs-appellants.*

*Templeton & Raynor, P.A., by Kenneth R. Raynor and Erik A. Schwanz, for defendant-appellant Hillcrest Foods, Inc.*

*Hedrick, Eatman, Gardner & Kincheloe, L.L.P., by Paul C. Lawrence, for defendants-appellants Waffle House, Inc. and Waffle House Holding Company, Inc.*

TIMMONS-GOODSON, Judge.

On the morning of 11 July 1993, at approximately 3:00 a.m., James Lee Popwell ("Popwell") and Arthur Franklin Brown ("Brown") (collectively "plaintiffs") entered the Waffle House restaurant ("the restaurant") located at 3309 Mulberry Church Road in Charlotte, North Carolina. The restaurant is owned by Hillcrest Foods, Inc. ("defendant Hillcrest" or "Hillcrest") and was operated according to a franchise agreement with Waffle House, Inc. and Waffle House Holding Company, Inc. (collectively "defendants Waffle House" or "Waffle House"). Plaintiffs sat down at a booth and Amy Somers served their meals. When plaintiffs had almost finished eating, Patsy Jones ("Jones") and four Mexican men entered the restaurant and sat down in chairs directly across from plaintiffs. Jones had previously visited the restaurant and had been asked to leave as a result of her bad behavior towards sales persons and customers. Jones confronted

plaintiffs and told them to hurry up and get out of the booth. Plaintiffs remained in the booth.

Popwell was talking to a friend in another booth when Jones said, "What do you mean we're from the wrong f—ing country." Popwell responded, "That's not what I meant. I wasn't talking to you. That's not what I said." Jones turned and made a statement to the Mexican men in Spanish. Two of the Mexican men stood up and approached the booth. Popwell jumped up. Brown then stood between Popwell and Jones and said, "Calm down, let's, you know, let's stop this right here. Right now. There's no need for nothing like that." Jones responded, "I'm going to put my boys on you." Linda Landers, a cook for the restaurant, told Jones to be quiet or leave. Popwell and Brown sat down. Standing next to the booth looking at plaintiffs, Jones said, "I've got something for both of you." She then left the restaurant. Landers dialed 911 to report the altercation. Popwell and Brown left the booth to pay their bill.

Jones and two of the Mexican men walked to a car in the parking lot of the restaurant. Brown, Somers and others in the restaurant watched as Jones and the two Mexican men opened the trunk and removed guns. Employees of the restaurant told plaintiffs that they could leave through the back door to avoid a confrontation, but plaintiffs refused. Plaintiffs remained in the restaurant paying their bill when Jones and the two Mexican men reentered the restaurant armed with guns. Paul Katsadas, the manager trainee, told Jones and the Mexican men that they could not bring firearms into the restaurant. Jones threatened to shoot Katsadas, saying, "Shut up or I'll plant one in you too." Jones and the Mexican men approached plaintiffs, pushed them into the counter and encircled them. Jones taunted plaintiffs. Plaintiffs stopped trying to exit the restaurant and began fighting with the four Mexican men. During the altercation, Popwell was shot and killed. Brown suffered serious gunshot wounds.

Betty S. Benton filed a wrongful death action as administratrix of the Estate of James Lee Popwell, the decedent. Brown filed a personal injury action for injuries sustained during the incident. Both plaintiffs sued Hillcrest and Waffle House. Hillcrest and Waffle House filed motions for partial summary judgment as to punitive damages. Hillcrest's motion was denied while Waffle House's motion was granted.

At the end of plaintiff's evidence at trial, the court granted Waffle House's motion for a directed verdict. The court bifurcated the puni-

**BENTON v. HILLCREST FOODS, INC.**

[136 N.C. App. 42 (1999)]

tive damages issue from the trial of the compensatory damages issues. Hillcrest's motion for directed verdict as to willful and wanton negligence was granted. The jury returned as its verdict that while Hillcrest was negligent, Brown and Popwell were contributorily negligent. All parties appeal.

## Plaintiffs' Appeal

Plaintiffs raise numerous assignments of error. The dispositive issues presented by plaintiffs' appeal are whether the trial court erred: (I) in denying plaintiffs' motions for directed verdict and judgment notwithstanding the verdict on the issue of contributory negligence; (II) in failing to instruct the jury on concurring acts of negligence and self-defense; (III) in granting the motion for directed verdict for defendant Hillcrest as to the punitive damages claim; (IV) in granting the motion for directed verdict of defendants Waffle House as to all claims; (V) in denying plaintiffs' motion for the last jury argument; (VI) in excluding evidence of written instructions to security guards; (VII) in excluding crime analysis data from 1988-1991; and, (VIII) in failing to qualify Leroy Wagner, Jr. as an expert witness.

I.

**[1]** By their first assignment of error, plaintiffs argue that the trial court erred in denying their motions for directed verdict and judgment notwithstanding the verdict on the issue of contributory negligence. Specifically, plaintiffs contend that contributory negligence was not available as a defense because plaintiffs' actions were intentional and deliberate rather than negligent. We cannot agree.

A motion for judgment notwithstanding the verdict is a renewal of an earlier directed verdict motion; therefore, the same standard of review applies to both motions. *Norman Owen Trucking v. Morkoski*, 131 N.C. App. 168, 172, 506 S.E.2d 267, 270 (1998). When reviewing motions for directed verdict and judgment notwithstanding the verdict, the trial court must determine whether the evidence, considered in the light most favorable to the non-moving party, is sufficient to present the case to the jury. *Id.* "The motion should be denied if there is more than a scintilla of evidence supporting each element of the non-movant's claim." *Id.* In other words, the trial court should deny the motions if there exists substantial evidence or "such relevant evidence as a reasonable mind might accept as adequate to sup-

port a conclusion." *State v. Smith*, 300 N.C. 71, 78-79, 265 S.E.2d 164, 169 (1980). A directed verdict should not be granted when conflicting evidence has been presented on contested issues of fact. *Ace Chemical Corp. v. DSI Transports, Inc.*, 115 N.C.App. 237, 242, 446 S.E.2d 100, 103 (1994).

Only in extraordinary cases is it proper for the trial court to enter a directed verdict or judgment notwithstanding the verdict against a party in a negligence case. *Taylor v. Walker*, 320 N.C. 729, 734, 360 S.E.2d 796, 799 (1987). Generally, the issue of negligence as a basis for recovery or, in the alternative, contributory negligence as a bar to recovery, is for the jury. *Id.*

A person is guilty of contributory negligence if he or she does not use ordinary care for his or her safety. *Clark v. Roberts*, 263 N.C. 336, 343, 139 S.E.2d 593, 597 (1965).

> Every person having the capacity to exercise ordinary care for his own safety against injury is required by law to do so, and if he fails to exercise such care, and such failure, concurring and cooperating with the actionable negligence of defendant contributes to the injury complained of, he is guilty of contributory negligence.

*Id.* Ordinary care is defined as "such care as an ordinarily prudent person would exercise under similar circumstances to avoid injury." *Id.*

In the case *sub judice*, defendants presented the following evidence that plaintiffs failed to use ordinary care for their own safety. Plaintiffs provoked the Mexican men by referring to them as "wetbacks." Plaintiffs were aware that Jones and the Mexican men were about to reenter the restaurant with loaded guns, yet when employees of the restaurant told plaintiffs they could leave through the back door, plaintiffs refused. Plaintiffs initiated a physical confrontation with the Mexican men even though plaintiffs had been informed that the police would arrive shortly to resolve the situation. Viewing the evidence in the light most favorable to defendants, we believe there was substantial evidence that plaintiffs failed to use ordinary care for their own safety.

[2] Furthermore, we reject plaintiffs' argument that the doctrine of contributory negligence is not applicable on the grounds that plaintiffs' acts were intentional. The facts of this case are similar to those of *Taylor*, 320 N.C. 729, 360 S.E.2d 796, in which the plaintiff brought

an action against a tavernkeeper after third-parties inflicted injuries on plaintiff at the tavern. The *Taylor* court submitted the issue of contributory negligence to the jury where the plaintiff punched one of the third-parties and failed to avail himself of an earlier opportunity to leave the tavern when he knew the third-parties were drunk and had a reputation for carrying arms.

In the case *sub judice,* we conclude that the trial court did not err in submitting the issue of contributory negligence to the jury. We further conclude that the trial court did not err in denying plaintiffs' motion for a new trial on the issue of contributory negligence.

## II.

[3] By their second assignment of error, plaintiffs argue that the trial court erred in instructing the jury as to contributory negligence in that the trial court failed to instruct the jury on the doctrines of concurring acts of negligence and self-defense.

"Assignments of error not set out in the appellant's brief, or in support of which no reason or argument is stated or authority cited, will be taken as abandoned." N.C.R. App. P. 28(b)(5). Plaintiffs do not cite any legal authority nor do they make an argument for extension of the law in support of their argument that the trial court erred in failing to instruct the jury on concurring acts of negligence. *See Strader v. Sunstates Corp.,* 129 N.C. App. 562, 500 S.E.2d 752, *disc. review denied,* 349 N.C. 240, 514 S.E.2d 274 (1998). Accordingly, the jury instruction issue relating to concurring acts of negligence is deemed abandoned.

[4] While self-defense may be raised in a civil action, self-defense is an affirmative defense which the *defendant* must raise in the pleadings. *Young v. Warren,* 95 N.C. App. 585, 383 S.E.2d 381 (1989). When evidence exists from which it may be inferred that a *defendant* acted in self-defense, he is entitled to a jury instruction on self-defense. *State v. Marsh,* 293 N.C. 353, 354, 237 S.E.2d 745, 747 (1977).

In the present case, plaintiffs attempt to avail themselves of an affirmative defense by arguing that the trial court erred in failing to instruct the jury on self-defense. Plaintiffs fail to cite a case in which a plaintiff, rather than a defendant, was prejudiced by the trial court's failure to instruct the jury on self-defense. We do not find support in North Carolina law for the proposition that a plaintiff is entitled to an instruction on self-defense in order to rebut the affirmative defense of contributory negligence. Therefore, we conclude that the

trial court did not err in refusing to charge the jury on the doctrine of self-defense.

### III.

**[5]** By their third assignment of error, plaintiffs argue that the trial court erred in granting the motion for directed verdict for defendant Hillcrest as to the punitive damages claim based on willful or wanton negligence. We cannot agree.

As a general rule, punitive damages may be recovered where tortious conduct is accompanied by an element of aggravation. *Robinson v. Duszynski*, 36 N.C. App. 103, 243 S.E.2d 148 (1978). According to the wrongful death statute, punitive damages are recoverable "for wrongfully causing the death of the decedent through maliciousness, wilful or wanton injury, or gross negligence[.]" N.C. Gen. Stat. § 28A-18-2 (1984).

Plaintiffs contend that "gross negligence" and "wilful or wanton conduct" refer to different standards of tortious behavior. According to plaintiffs, in a wrongful death case, "gross negligence" describes a lower level of tortious conduct than "wilful or wanton conduct."

In a recent case involving a contributory negligence claim, this Court held that "gross negligence . . . cannot be read to describe conduct less negligent than that suggested by the phrase 'wilful or wanton conduct.' " *Cissell v. Glover Landscape Supply, Inc.*, 126 N.C. App. 667, 669, 486 S.E.2d 472, 473, *disc. review denied*, 347 N.C. 396, 494 S.E.2d 408 (1997), *rev'd on other grounds*, 348 N.C. 67, 497 S.E.2d 283 (1998). *See also Weatherford v. Glassman*, 129 N.C. App. 618, 500 S.E.2d 466 (1998) (holding in a medical malpractice case that the standard of gross negligence embodies that of willful or wanton conduct).

This Court relied on the *Cissell* holding in a decision arising out of a wrongful death action. *Parchment v. Garner*, 135 N.C. App. 312, 520 S.E.2d 100 (1999). The *Parchment* court recognized that the phrases were interchangeable: "contributory negligence will not prohibit recovery where the defendant has engaged in willful or wanton conduct . . . which is often referred to as 'gross negligence[.]' " *Id.* at 316-17, 520 S.E.2d at 103 (citations omitted). Until the Supreme Court rules otherwise, we are bound by the precedent set by previous panels of this Court. *Heatherly v. Industrial Health Council*, 130 N.C. App. 616, 504 S.E.2d 102 (1998). Therefore, we reject plaintiffs' argument that "gross negligence" constitutes a lower standard of negli-

gence than "wilful or wanton conduct" in the context of a wrongful death suit.

A wanton act is an act done with a "wicked purpose or . . . done needlessly, manifesting a reckless indifference to the rights of others." *Siders v. Gibbs*, 39 N.C. App. 183, 187, 249 S.E.2d 858, 861 (1978) (citations omitted). An act is willful when there is a deliberate purpose not to discharge a duty, assumed by contract or imposed by law, necessary for the safety of the person or property of another. *Brewer v. Harris*, 279 N.C. 288, 297, 182 S.E.2d 345, 350 (1971) (citations omitted).

The facts of the present case are similar to those in *Wesley v. Greyhound Lines, Inc.*, 47 N.C. App. 680, 268 S.E.2d 855, *disc. review denied*, 301 N.C. 239, 283 S.E.2d 136 (1980). In *Wesley*, the plaintiff sued the bus company for failing to protect her from an assault which occurred in the restroom of the defendant's bus station at around 3:00 a.m. The plaintiff showed that the defendant's station was located in a high crime area in which drug arrests were common and that pimps, prostitutes and bums loitered at the station. The assailant, a loiterer, had bothered passengers in the station on other occasions and had been asked to leave the station on multiple occasions. The entrance to the women's restroom was not observable by employees at defendant's station, although technological means were available to make it so. While a police officer had spoken to defendant's agents about the need for and availability of security guards, the defendant had not provided any. The *Wesley* court found the evidence insufficient to submit the issue of willful and wanton negligence to the jurors even though the defendant had a special duty as a carrier to protect its passengers from assault.

In the case *sub judice*, the evidence presented by plaintiffs tended to show that no security measures such as locks or guards were in place to protect customers at the restaurant and the restaurant was located in a high crime area. When taken in the light most favorable to plaintiffs, the evidence was not sufficient as a matter of law to justify a verdict for plaintiffs. Therefore, the trial court did not err in granting the motion for directed verdict for defendant Hillcrest as to the punitive damages claim.

IV.

[6] By their fourth assignment of error, plaintiffs argue that the trial court erred in granting the motion for directed verdict of defendants

Waffle House as to all claims of the plaintiffs. We have already determined that the issue of whether plaintiffs were contributorily negligent was properly submitted to the jury. The jury found plaintiffs were contributorily negligent. Therefore, even if plaintiffs could show negligence on the part of Waffle House, plaintiffs would be barred from recovering from Waffle House. *See Butner v. R.R.*, 199 N.C. 695, 155 S.E. 601 (1930). Therefore, we do not need to reach the issue of whether defendants Waffle House are liable for the negligent acts or omissions of Hillcrest.

## V.

[7] By their fifth assignment of error, plaintiffs argue that the trial court erred in denying plaintiffs' motion for the last jury argument on the ground that defendants in effect introduced evidence by marking exhibits and extensively questioning witnesses about such exhibits. We cannot agree.

The order of jury arguments is in the discretion of the trial court and its decision is final. *Pinner v. Southern Bell*, 60 N.C. App. 257, 262, 298 S.E.2d 749, 753, *disc. review denied*, 308 N.C. 387, 302 S.E.2d 253 (1983). Therefore, the trial court did not err in denying plaintiffs' motion for the last jury argument.

## VI.

[8] By their sixth assignment of error, plaintiffs argue that the trial court erred in excluding evidence of subsequent remedial measures in the form of written instructions to security guards. We cannot agree.

Evidence of subsequent remedial measures "is not admissible to prove negligence or culpable conduct in connection with the event." N.C. Gen. Stat. § 8C-1, Rule 407 (1992). However, Rule 407 "does not require the exclusion of evidence of subsequent measures when offered for another purpose, such as proving ownership, control, or feasibility of precautionary measures, if those issues are controverted, or impeachment." *Id.* Rule 407 is based on the policy that individuals "should be encouraged to improve, or repair, and not be deterred from it by the fear that if they do so their acts will be construed into an admission that they had been wrongdoers." *R.R. v. Trucking Co.*, 238 N.C. 422, 425, 78 S.E.2d 159, 161 (1953) (citations omitted).

**BENTON v. HILLCREST FOODS, INC.**

[136 N.C. App. 42 (1999)]

Plaintiffs concede that the instructions to security guards were created after the shootings in issue. However, plaintiffs argue that the instructions, which state that the security guards should lock the door in the event of a disturbance in the parking lot, show the feasibility of precautionary measures and would have impeached defendants' testimony that there was no reason to lock the front door of the restaurant which was open twenty-four hours a day.

A witness for defendant stated, "There's no reason to lock the door." However, testimony that there is no reason to lock the door does not address the feasibility of locking the door. Instead, the statement refers to the perceived lack of necessity to do so. Therefore, whether or not it would have been possible to lock the door was not controverted, and evidence that such a measure would have been feasible is not admissible under Rule 407.

Furthermore, the trial court excluded the evidence following an objection based on Rule 403 by counsel for defendant Hillcrest. According to Rule 403, evidence is inadmissible when the probative value is "substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . ." N.C. Gen. Stat. § 8C-1, Rule 403 (1992).

Whether to exclude evidence under Rule 403 is within the sound discretion of the trial court; this Court will not disturb its ruling absent a showing that the ruling was "so arbitrary that it could not have been the result of a reasoned decision." *State v. Jones*, 89 N.C. App. 584, 594, 367 S.E.2d 139, 145 (1988) (citations omitted). As we believe that the proffered evidence is of slight probative value and presents a danger that the jury would be unfairly prejudiced against defendant for not having taken the remedial measure earlier, we conclude that the trial court did not abuse its discretion in excluding evidence of a subsequent remedial measure.

## VII.

[9] By their seventh assignment of error, plaintiffs argue that the trial court erred in excluding the analysis of 1988-1991 data from John Couchell, a crime analysis expert. We cannot agree.

The trial court may exclude relevant evidence "if its probative value is substantially outweighed by . . . considerations of undue delay, waste of time, or needless presentation of cumulative evidence." N.C.G.S. § 8C-1, Rule 403.

In *Murrow v. Daniels*, 321 N.C. 494, 501, 364 S.E.2d 392, 397 (1988), our Supreme Court stated, "evidence of prior criminal acts by third parties on or near the premises involved is admissible to show a defendant's knowledge of the need to provide adequate security measures to protect its business invitees." Therefore, evidence of criminal acts near the premises in question is admissible unless it is excluded by another rule. *Id.* In *Murrow*, evidence of prior criminal acts occurring between 1977 and 1982 was admissible where the crime in issue took place in June 1982.

In the present case, the shooting incident at the restaurant occurred on 11 July 1993. The trial court allowed plaintiffs to introduce records of 911 calls from January 1988 through July 1993 concerning incidents at the restaurant. Furthermore, crime analyst John Couchell was allowed to testify as to the types of offenses that had prompted the 911 calls in 1992 and 1993.

Couchell also testified as to the crimes that had occurred within a one-half mile radius of the restaurant in 1992 and 1993. In addition to providing the total number of reported offenses for 1992 and 1993, Couchell provided breakdowns of the types of offenses which had been reported and whether they constituted violent crimes or property crimes.

While the plaintiff in *Murrow* was allowed to present evidence of crime for a greater temporal span than plaintiffs in the case *sub judice*, the data in *Murrow* pertained to a smaller geographical area. The *Murrow* plaintiff presented evidence of crimes that had taken place at an intersection of two highways, while plaintiffs in the present case presented evidence of crimes that had taken place within a one-half mile radius of the restaurant.

We do not believe the trial court's decision to exclude data pertaining to criminal activity from 1988 to 1991 violated the holding in *Murrow*. Based on the above evidence, plaintiffs were permitted to demonstrate defendants' knowledge of the need to provide adequate security measures to protect its business invitees.

In light of the fact that more recent data had been admitted, the trial court could have determined that data pertaining to criminal activity from 1988 to 1991 was merely cumulative. *See* N.C.G.S. § 8C-1, Rule 403. Furthermore, plaintiffs were found contributorily negligent, and additional crime data from Couchell would not have affected the jury decision as to plaintiffs' negligence. As such, even if

**BENTON v. HILLCREST FOODS, INC.**

[136 N.C. App. 42 (1999)]

the trial court had erred in excluding the 1988-1991 data, such error would have been harmless. *See* N.C. Gen. Stat. § 1A-1, Rule 61 (1990). We conclude that the trial court did not err in excluding the analysis of 1988-1991 data from John Couchell, a crime analysis expert.

## VIII.

[10] By their eighth assignment of error, plaintiffs argue that the trial court erred in failing to qualify Leroy Wagner, Jr. as an expert witness in the field of security for restaurants and in excluding his opinions. We cannot agree.

"If a party . . . fails to obey an order to provide or permit discovery . . . a judge . . . may make such orders in regard to the failure as are just[.]" N.C. Gen. Stat. § 1A-1, Rule 37(b)(2) (1990). The choice of sanctions under Rule 37 is within the trial court's discretion and will not be disturbed on appeal absent a showing of an abuse of discretion. *Hursey v. Homes By Design, Inc.*, 121 N.C. App. 175, 464 S.E.2d 504 (1995).

In the case at bar, plaintiffs violated a pre-trial discovery order in that they failed to identify Leroy Wagner, Jr. as an expert. Defendants did not have notice that plaintiffs would seek to qualify Wagner as an expert until trial. Therefore, it was within the trial court's discretion to exclude Wagner's testimony.

Furthermore, the trial court has broad discretion in determining the admissibility of expert witness testimony and its ruling will not be disturbed on appeal absent a showing of an abuse of discretion. *Jennings v. Jessen*, 103 N.C. App. 739, 407 S.E.2d 264 (1991). Plaintiffs retained an expert witness, Alan H. Crawford, who testified as to security issues at the restaurant. Proffered testimony for Wagner reveals that Wagner would have testified as to the same security issues, such that his testimony would have been cumulative. We conclude that the trial court did not abuse its discretion in excluding Leroy Wagner, Jr. from testifying.

## IX.

After reviewing all of plaintiffs' remaining assignments of error, we conclude that they are meritless.

## Defendants' Appeals

Defendants' arguments and assignments of error depend on our finding merit in plaintiffs' appeal. Based on our disposition of plain-

tiffs' issues on appeal, we need not address the issues raised by defendants on appeal.

For all of the foregoing reasons, we hold that plaintiffs were afforded a fair trial free from prejudicial error and that judgment was properly entered for defendants.

No error.

Judges LEWIS and HORTON concur.