TRAXLER, Chief Judge,
dissenting:
Because I believe TI was entitled to judgment as a matter of law on the basis of contributory negligence, I respectfully dissent.[1]
We review the denial of a judgment as a matter of law de novo. See Konkel v. Bob Evans Farms, Inc., 165 F.3d 275, 279 (4th Cir.1999). We must grant judgment as a matter of law against a party on a claim when she “has been fully heard” on that claim and “a reasonable jury would not have a legally sufficient evidentiary basis to find” in her favor. See Fed.R.Civ.P. 50(a). “Because we are sitting in diversity, our role is to apply the governing state law, or, if necessary, predict how the state’s highest court would rule on an unsettled issue.” Horace Mann Ins. Co. v. General Star Nat'l Ins. Co., 514 F.3d 327, 329 (4th Cir.2008). When a state’s highest court has not directly spoken to an issue, decisions of the state’s intermediate appellate court “constitute the next best indicia of what state law is, although such decisions may be disregarded if the federal court is convinced by other persuasive data that the highest court of the state would decide otherwise.” Liberty Mut. Ins. Co. v. Triangle Indus., Inc., 957 F.2d 1153, 1156 (4th Cir.1992) (internal quotation marks omitted).
In North Carolina, “[ejvery person having the capacity to exercise ordinary care for his own safety against injury is required by law to do so, and if he fails to exercise such care, and such failure, concurring and cooperating with the actionable negligence of defendant, contributes to the injury complained of, he is guilty of contributory negligence.” Clark v. Roberts, 263 N.C. 336, 139 S.E.2d 593, 597 (1965). Thus, under North Carolina common law, no recovery may be had in tort for the plaintiffs injuries when his failure to exercise reasonable care is a proximate cause of his injuries. See Holderfield v. Rummage Bros. Trucking Co., 232 N.C. 623, 61 S.E.2d 904, 906 (1950).[2]
Here, after being fired for insubordination, Turner refused to leave the store, even when Blackert told him she was calling the police. When store manager Antwan Wesley arrived at the store, Turner began yelling and cursing at him and aggressively advancing on him like he wanted to fight. As Wesley retreated, Turner slung a display and threw an umbrella.
*337 Responding to Blackert’s call, Charlotte-Mecklenburg Police Officer Dawson then entered the store. As Turner pivoted and saw Dawson walking toward him with his X26 unholstered, Turner said, “F**k the police,” and turned back to Wesley. J.A. 650 (internal quotation marks omitted). Dawson told Turner to calm down, but Turner continued to act “very aggressively” toward Wesley with “his hands clenched, his fists balled up” as if “he was getting ready to lunge at him.” J.A. 313-14. Turner then turned toward Officer Dawson, and walked toward him with a “swaggerly, macho type of a walk,” looking like he was going to fight Officer Dawson. J.A. 607.
Dawson aimed his X26 at Dawson. Turner looked down, saw the laser dot on his chest, but continued to step toward Dawson with his fists clenched. As Turner got within 3-5 feet of Dawson, Dawson deployed his Taser and the probes, struck Turner near the sternum. Even then, Turner refused to submit. Rather, he continued walking and picked up a metal bag rack and threw it. Attempting to protect himself and the store customers, Dawson continued to hold the trigger down as Turner continued to refuse Dawson’s commands to get down. Turner eventually collapsed and died from ventricular fibrillation.
Several cases from the North Carolina Court of Appeals with facts analogous to ours demonstrate as a matter of North Carolina law that Turner was contribu-torily negligent in continuing his aggressive behavior even after the officer told him to calm down and even after he drew his Taser and pointed it at Turner. Most relevant is Braswell v. N.C. A & T State University, 5 N.C.App. 1, 168 S.E.2d 24, 30-31 (1969), wherein the court applied the doctrine of contributory negligence to reverse a damage award made by the North Carolina Industrial Commission. In that case, the plaintiff had joined a mob that was attempting to force gymnasium doors open at a public dance, and he was accidentally struck by a ricocheted bullet fired by a campus security officer. The North Carolina Court of Appeals concluded as a matter of law¡ that the plaintiff was con-tributorily negligent and that his negligence was a proximate cause of his injuries:
It seems to us that it was reasonably foreseeable that the security officer would undertake to perform his duty to prevent an illegal breaking and entry of the building, and that someone in the crowd was likely to be injured in the process. It also seems that a reasonably prudent person, in the exercise of due care for his own safety, would not participate in mob action which was clearly intended to be in violation of the law and contrary to reasonable conduct. Every person is charged with the duty of exercising •reasonable care for his own safety, and the joining in illegal mob action is-not an exercise of reasonable care; in so doing plaintiff assumed the risk of whatever injury he might receive as a result. In addition, the illegal conduct of the mob of which the plaintiff was voluntarily a part was such as would reasonably be calculated to provoke the security officer into taking some action to disperse the mob.
We think the facts, as found by the Commission, give rise to one inference only, and that is — that the plaintiff was contributorily negligent in joining and rejoining the crowd. He knew they were acting in an unruly and unlawful manner and that the officer had warned them to stop trying to break in the doors. With this knowledge, he voluntarily became a member of the crowd on two occasions, and was rejoining the crowd a third time when he was shot. *338 We think these facts point to only one conclusion; that is, the plaintiff was con-tributorily negligent as a matter of law.
Id. at 30-31 (emphasis added).[3] The very same reasoning applies here. By continuing to act in a hostile manner, including saying “F**k the police” when Officer Dawson walked in, J.A. 309, 650, continuing to act “very aggressively” toward Wesley with “his hands clenched, his fists balled up” as if “he was getting ready to lunge at him,” J.A. 313-14, walking toward Officer Dawson with a “swaggerly, macho type of a walk” looking like he was going to assault Dawson, J.A. 607, and then refusing to submit even when he was being shocked with the X26, Turner took unreasonable actions that a reasonable person would realize would prompt a physical response — and then a further physical response — from Officer Dawson. By virtue of this negligence, Turner “assumed the risk of whatever injury he might receive as a result.” Braswell, 168 S.E.2d at 31; cf. Benton v. Hillcrest Foods, Inc., 136 N.C.App. 42, 524 S.E.2d 53, 58 (1999) (holding that when plaintiffs engaged others with belligerent, confrontational behavior, failed to leave restaurant when they had the opportunity to avoid escalation of physical violence, and then were injured in the resulting confrontation, it gave rise to reasonable inference that plaintiffs were contributorily negligent in a lawsuit against restaurant’s owner and franchisor); see also Hinton v. City of Raleigh, 46 N.C.App. 305, 264 S.E.2d 777, 779 (1980) (affirming summary judgment against plaintiff robbery suspect when suspect committed armed robbery, refused to surrender when ordered by police, moved aggressively toward a police officer, and was later shot by that officer).
Fontenot argues that any negligence by Turner was not the proximate cause of his injuries because the particular hazard that befell him — having his heart stopped by the X26 — was unforeseeable to someone in his position. However, although foreseeability of injury is an essential element of proximate cause, “[i]t is not required that the injury in the precise form in which it occurred should have been foreseeable but only that, in the exercise of reasonable care, consequences of a generally injurious nature might have been expected.” *339 McNair v. Boyette, 282 N.C. 230, 192 S.E.2d 457, 461 (1972) (emphasis added); see also Braswell, 168 S.E.2d at 31 (“[T]he joining in illegal mob action is not an exercise of reasonable care; in so doing plaintiff assumed the risk of .whatever injury he might receive as a result)”). Here, Turner obviously knew Officer Dawson had pulled out his Taser, focused its laser sight on Turner’s chest, and was prepared to shoot Turner with enough electrical current to cause his collapse if necessary, yet in the face of all this Turner continued to advance on the officer in a hostile manner. Certainly it was foreseeable, if not obvious, that Turner would be injured by the officer’s response.
Fontenot next contends that regardless of how the doctrine of contributory negligence would apply in a non-produets-lia-bility case, language in the North Carolina Products Liability Act (“the Act”) prevents application of the doctrine here. The plaintiff contends that any contributory negligence on Turner’s part in the fatal incident cannot be a defense to the products liability action against the Taser manufacturer because Turner was not the user of the product, the Taser. I disagree. The North Carolina General Assembly adopted the Act, which added the new Chapter 99B to the North Carolina Code, effective October 1, 1979. See 1979 N.C. Sess. Laws Ch. 654. The Legislative Research Commission, which was directed by the General Assembly to study the law, explained that the comprehensive legislation was designed to protect manufacturers, retailers, and wholesalers from “rapidly escalating premiums for products liability insurance and [the] potential nonavailability of such coverage ... [b]y codifying North Carolina’s case law, removing uncertainty in the statutes of limitations for products liability actions, and by establishing an absolute time after the purchase of a product beyond which no action can be maintained.” Product Liability Report to the 1981 General Assembly at 2 (Jan. 14, 1981).
N.C.G.S. § 99B-4 concerns the doctrine of contributory negligence in products liability cases. As originally enacted, it provided:
No manufacturer or seller shall be held liable in any product liability action if:
(1) the use of the product giving rise to' the product liability action was contrary to any express and adequate instructions or warnings delivered with, appearing on, or attached to the product or on its original container or wrapping, if the user knew or with the exercise of reasonable and diligent care should have known of such instructions or warnings; provided, that in the case of prescription drugs or devices the adequacy of the warning by the manufacturer shall be determined by the prescribing information made available by the manufacturer to the health care practitioner; or
(2) the user discovered a defect or unreasonably dangerous condition of the product and was aware of the danger, and nevertheless proceeded unreasonably to make use of the product and was injured by or caused injury with that product; or
(3) The claimant failed to exercise reasonable care under the circumstances in his use of the product, and such failure was a proximate cause of the occurrence that caused injury or damage to the claimant.
See 1979 N.C. Sess. Laws Ch. 654 (emphasis added).[4] Effective January 1,1996, the *340 legislature amended the Act in several respects. As is relevant. here, § 99B-4(3) was changed as follows:
(3) The claimant failed to exercise reasonable care under the circumstances in his the use of the product, and such failure was a proximate cause of the occurrence that caused the injury or
1995 N.C. Sess. Laws Ch. 522.
Consistent with the General Assembly’s intention in enacting the Act, the North Carolina Supreme Court has consistently held that the effect of § 99B — 4(1) and (3)— in their pre-amendment form — was “merely [to] codify the doctrine of contributory negligence as it applies in” products liability actions, and to “set[] out or explain[] more specialized fact patterns which would amount to contributory negligence in a products liability action.” Champs Convenience Stores, Inc. v. United Chem. Co., 329 N.C. 446, 406 S.E.2d 856, 860 (1991). Thus, the court has emphasized that “[i]n a product liability action founded on negligence, there is no doubt that plaintiffs contributory negligence will bar his recovery to the same extent as in any other negligence case.” Smith v. Fiber Controls Corp., 300 N.C. 669, 268 S.E.2d 504, 506 (1980) (alterations omitted).
Drawing on the language of § 99B-4(3), Fontenot maintains that because the statute refers to a claimant “failing] to exercise reasonable care under the circumstances in the use of the product,” a claimant can be found contributorily negligent in a products liability case only if he used the product. Fontenot argues that if we do not construe “in the use of the product” to limit the type of negligence on the part of a claimant that can bar recovery, we are essentially reading that language out of the statute. Were we writing on a clean slate, Fontenot’s proposed construction might have some appeal. Unfortunately for Fontenot, however, her argument is clearly in conflict with the North Carolina Supreme Court, which has construed the statute as merely codifying preexisting common law rules and establishing their application in certain particularized fact patterns without making any new rules for products liability cases. Indeed, we have already rejected a construction very similar to the one Fontenot urges on this basis and so has the North Carolina Supreme Court. See Jones v. Owens-Coming Fiberglas Corp., 69 F.3d 712 (4th Cir.1995); Nicholson v. American Safety Util. Corp., 346 N.C. 767, 488 S.E.2d 240 (1997) (“Nicholson II”).
In Jones, the plaintiffs worked for many years for a plant that manufactured a product insulated with asbestos. Exposed to asbestos on a daily basis, the plaintiffs eventually developed asbestosis and lung cancer and later filed products liability suits against the asbestos manufacturer. The district court consolidated the cases and granted partial summary judgment to the plaintiffs on the issue of whether they could be held contributorily negligent as a result of their long-term smoking. When the plaintiffs later prevailed on their claims at trial, the defendant appealed, arguing, as relevant here, that the district court erred in granting partial summary judgment on the contributory negligence issue.
We reversed the judgment. In so doing, we considered the argument that § 99B-4 (3)’s reference to a plaintiffs “failure] to exercise reasonable care under the circumstances in his use of the product” demonstrated that in products liability actions a plaintiffs negligence can only bar recovery if it is the plaintiffs use of the product that *341 is negligent. See id. at 719-22. We noted, however, that the North Carolina Supreme Court has held that § 99B-4(3) “ ‘reaffirms the applicability of contributory negligence as a defense in product liability actions’ ” and “ ‘merely codifies the doctrine of contributory negligence as it applies in actions brought under Ch. 99B.’ ” Id. at 719 (quoting Smith, 268 S.E.2d at 510, and Champs, 406 S.E.2d at 860) (alteration omitted). We therefore concluded that “the statutory focus [of § 99B-4(3) ] is not ... merely on [the plaintiffs’] ‘use of the product’ per se ” but rather on whether they “ ‘failed to exercise reasonable care under the circumstances in [their] use of the product.’ ” Id. at 721-22 (emphasis omitted) (final alteration in original). We observed that our interpretation was “based on the plain language of the entire statute ... and the definitive interpretation placed thereon by the North Carolina Supreme Court, not on certain statutory language read in isolation.” Id. at 721. Because under the plaintiffs’ own theory -of the case, their smoking combined with their asbestos exposure “‘synergistically’” to substantially increase their risk of getting lung cancer, we concluded that their long-term smoking could be found to be contributory negligence barring their recovery. Id. at 720.
Citing Jones with approval, the North Carolina Supreme Court reached a similar conclusion on similar facts in Nicholson II. In that case, the plaintiff, an electrical lineman, was working on a project extending an overhead power line. He was wearing a protective helmet and safety gloves, but his helmet blew off multiple times and he eventually decided to continue to work without retrieving it. When an energized line either touched or came close to touching his unprotected head, he was severely injured. In a products liability action against the manufacturer and distributor of the gloves, the trial court granted summary judgment against the plaintiff, concluding, as is relevant here, that recovery was barred as a matter of law under the doctrine of contributory negligence because of his continuing to work after he lost his helmet. See id. at 243.
On appeal to the North Carolina Court of Appeals, plaintiff maintained that “contributory negligence does not apply unless plaintiffs use of the gloves was unreasonable under the circumstances, regardless of any alleged failure otherwise to employ safety devices and act in an appropriate manner.” Nicholson v. American Safety Util. Corp., 124 N.C.App. 59, 476 S.E.2d 672, 679 (1996) (“Nicholson 7”).The Court of Appeals agreed based on its construction-of § 99B-4(3) and further noted that “in the cases before our Courts in which contributory negligence under G.S. 99B-4 has been alleged, all have involved the plaintiffs use of the alleged defective product.” Id. at 679-80. In light of the fact that none of the plaintiffs alleged contributory negligence actually concerned the manner in which he used the gloves, the court reversed the grant of summary judgment on contributory negligence. See id. at 680.
The North Carolina Supreme Court then granted discretionary review and unequivocally rejected the construction given the statute by the intermediate appellate court. See Nicholson II, 488 S.E.2d at 241. The North Carolina Supreme Court noted, as we did in Jones, that it had previously construed § 99B-4(3) merely to codify common law contributory negligence rules for actions brought under the new § 99B and that it did “not create a different rule for products liability actions.” Id. at 244; see id. at 243. The court therefore held, as we did, that § 99B-4(3) “does not limit the [contributory negligence] defense to the plaintiffs misuse of the product.” Id. at 241.
*342 The argument Fontenot makes to us now fails for the very same reasons that the plaintiffs’ arguments failed in Jones and Nicholson II. The North Carolina Supreme Court has consistently held that § 99B-4 merely codifies generally applicable common law rules and explains how those rules apply in particular factual scenarios but does not make special rules for products liability cases.[5] Those generally applicable common law rules dictate that no recovery may be had when a plaintiffs negligence was a proximate cause of his injuries. Whether the claimant used the product or had it used on him makes no difference.[6]
Fontenot identifies certain language from the opinions in Jones and Nicholson II that she contends supports her position that only circumstances during the plaintiffs use of the product may constitute contributory negligence in products liability cases. See Jones, 69 F.3d at 722 (“the statute requires the focus to be on whether [plaintiffs] ‘failed to exercise reasonable care under the circumstances in [their] use of the product’ ”) (emphasis added and omitted); Nicholson II, 488 S.E.2d at 244 (“[A]ll of the circumstances during the plaintiffs use of the product must be considered.” (emphasis added)). Again, however, context is key. In concluding that all of the plaintiffs conduct during his use could be considered, the Jones and Nicholson II courts were merely rejecting the proposition that only some of that conduct — namely, “plaintiffs conduct with respect to the product itself’ — could be considered. Nicholson II, 488 S.E.2d at 244. This language plainly was not intended to describe the outer boundaries of what conduct can be considered contributory negligence.
In sum, our conclusion in Jones — that § 99B-4 created no new contributory negligence rules in products liability cases, but rather codified the existing common law rules and set out certain fact-pattern applications of those rules — also requires rejection of plaintiffs proposed construction in this case. And, even were we not bound *343 by Jones, the North Carolina Supreme Court’s decision in Nicholson II also makes it clear that that court would reject plaintiffs proposed construction as well.[7] For these reasons, I believe the district court erred in denying TI’s motion for judgment as a matter of law. I respectfully dissent from the majority’s contrary holding.

. In moving for judgment as a matter of law at the close of the plaintiff’s case and renewing that motion at the close of defendant’s case and after the jury verdict, TI consistently relied on its argument that, as a matter of law, Turner’s contributory negligence barred any liability. See Fed.R.Civ.P. 50.

. North Carolina is one of only four states— and the District of Columbia — that continue to adhere to this all-or-nothing doctrine. Most states have instead adopted a system of comparative negligence, which apportions damages between a negligent plaintiff and negligent defendant according to their relative degree of fault rather than completely barring the negligent plaintiff’s recovery. See Coleman v. Soccer Ass’n of Columbia, 432 Md. 679, 69 A.3d 1149, 1160 & n. 3 (2013).

. In the context of the discussion of why the plaintiff's contributory negligence barred recovery, Braswell stated that by joining the mob, “plaintiff assumed the risk of whatever injury he might receive as a result.” Braswell v. N.C. A & T State Univ., 5 N.C.App. 1, 168 S.E.2d 24, 31 (1969). However, by use of the words "assumed the risk,” the Braswell court plainly did not intend to invoke a legal doctrine separate from contributory negligence. Rather, the sentence in question merely reflects that a "[pjlaintiff may be contributorily negligent if his conduct ignores unreasonable risks or dangers which would have been apparent to a prudent person exercising ordinary care for his safety.” Jenkins v. Lake Montonia Club, Inc., 125 N.C.App. 102, 479 S.E.2d 259, 263 (1997) (holding that, as a matter of law, contributory negligence barred a plaintiff's recovery from injuries from hitting his head on the bottom of a swimming area after diving off a slide when "[t]he danger of striking the bottom of the swimming area when diving head first into shallow water was obvious to plaintiff”); see also Dalrymple v. Sinkoe, 230 N.C. 453, 53 S.E.2d 437, 440 (1949) (in analyzing claim of contributory negligence, stating that "a buyer who uses the article after he discovers [that the article is not safe to use in the manner he is using it] will be held to have assumed all the risk of damage to himself, notwithstanding the seller's assurance of safety”); Deaton v. Board of Trustees of Elon College, 226 N.C. 433, 38 S.E.2d 561, 565 (1946) (" 'It has been repeatedly held that where one knowingly places himself in a place of danger which he might easily have avoided he assumes all the risks incident thereto.’ ”). That is exactly the way in which TI has consistently argued that Turner was contributorily negligent: Like the plaintiff in Braswell, Turner's conduct ignored the risk that the officer would hurt him in attempting to respond to his reckless conduct.

. " ‘Claimant’ means a person or other entity asserting a claim and, if said claim is asserted on behalf of an estate, an incompetent or a minor, ‘claimant’ includes plaintiff’s dece *340 dent, guardian, or guardian ad litem.” N.C.G.S. § 99B — 1 (1).

. Fontenot identifies language in § 99B-4(3) that, when read in isolation, might suggest that only a plaintiffs use of the defective product may constitute contributory negligence. However, the language Fontenot identifies is even less supportive of her position than the language that existed in the pre-amendment version of the statute that the Jones and Nicholson II courts considered. While the original version barred recovery when "[t]he claimant failed to exercise reasonable care under the circumstances in his use of the product, and such failure was a proximate cause of the occurrence that caused injury or damage to the claimant,” the amended version bars recovery when ”[t]he claimant failed to exercise reasonable care under the circumstances in the use of the product....” 1979 N.C. Sess. Laws Ch. 654 (emphasis added); 1995 N.C. Sess. Laws Ch. 522 (emphasis added); see Jones v. Owens-Coming Fiberglas Corp., 69 F.3d 712, 721 (4th Cir.1995) (observing that our conclusion that the focus of § 99B4(3) was not on the plaintiff's use of the product was "based on the plain language of the entire statute ... and the definitive interpretation placed thereon by the North Carolina Supreme Court, not on certain statutory language read in isolation”).

. Because officers generally use their Tasers only against suspects who are acting unreasonably, it is true that North Carolina’s con-tributary negligence rule would usually prevent recovery under a negligence theory for these suspects' resulting injuries. However, that is simply the consequence of North Carolina’s hard, all-or-nothing contributory negligence rule. It is not for us to judge the wisdom of North Carolina's rule from a policy standpoint, but only to apply it.

. Fontenot asserts that the fact that no cases have applied contributory negligence under North Carolina law to bar recovery when the plaintiff was not the user of the product indicates that North Carolina courts would not apply the doctrine in that circumstance. However, this fact is no more dispositive than it was in Nicholson I. See 476 S.E.2d 672, 679 (1996) ("[I]n the cases before our Courts in which contributory negligence under G.S. 99B-4 has been alleged, all have involved the plaintiff’s use of the allege defective product.”). It simply reflects that North Carolina has not been called upon to decide a case with those particular facts. TI can just as easily make the point that there is no case refusing to apply contributory negligence under North Carolina law on the basis that the plaintiff was not the user of the product.