IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA19-498

Filed: 1 September 2020

Nash County, No. 16 CVS 774

DONNIE GEORGE HOLLAND, EXECUTOR OF THE ESTATE OF SHIRLEY DAVIS PENDERGRASS, Plaintiff,

v.

RICHARD ALLAN FRENCH and NORTH CAROLINA DEPARTMENT OF TRANSPORTATION, Defendants.

Appeal by Defendant North Carolina Department of Transportation from order entered 18 October 2018 and from judgment entered 11 December 2018 by Judge Quentin T. Sumner in Nash County Superior Court. Heard in the Court of Appeals 8 January 2020.

*W. Earl Taylor, Jr. for plaintiff-appellee.*

*Attorney General Joshua H. Stein, by Special Deputy Attorneys General Alesia M. Balshakova, Joseph Finarelli, and Alexander G. Walton, for the State.*

MURPHY, Judge.

A professional recommendation concerning a stop sign's placement made in a post-accident report was a subsequent remedial measure typically excluded from evidence under Rule 407. That professional recommendation was appropriately used as impeachment evidence when it was properly admitted under the impeachment exception of Rule 407 and when it was relevant for impeachment under Rule 401. The professional recommendation was relevant evidence for impeachment purposes

when it contradicted the witness's perception, memory, or narration, or the veracity of the witness's testimony, on direct examination.

The trial court did not abuse its discretion in concluding the probative value of the professional recommendation was not substantially outweighed by the danger of unfair prejudice when the professional recommendation was highly probative, was prepared by the witness, and was used to contradict the witness on cross-examination.

When the party that called the witness to testify fails to request a limiting instruction in accordance with Rule 105 concerning the witness's recommendation, another party may make arguments concerning that evidence upon its proper admission.

## BACKGROUND

On 4 April 2016, Ms. Shirley Pendergrass ("Decedent") and Richard French ("French") were involved in a motor vehicle crash at the intersection of Castalia Road and Red Road in Nash County. Decedent was driving on Castalia Road in an easterly direction, while French was driving on Red Road in a northerly direction. A stop sign required drivers approaching the intersection in a northerly direction on Red Road to stop and yield to drivers on Castalia Road. Decedent and French arrived at the intersection at the same time, and despite the stop sign, French failed to stop and

yield the right of way. The two vehicles collided, and Decedent sustained fatal injuries.

French was charged with the following: misdemeanor death by motor vehicle; failing to stop for a stop sign; and failing to yield the right of way. On 5 August 2016, French pleaded guilty to misdemeanor reckless driving to endanger.

On 31 May 2016, Decedent's Executor, Donnie George Holland ("Plaintiff"), sued French and his wife, who owned the vehicle French was driving, for wrongful death. French's wife was later granted a dismissal from the case. Plaintiff alleged French's failure to stop at the duly erected stop sign at the intersection of State Road 1425 ("Castalia Road") and State Road 1417 ("SR 1417" or "Red Road") in Nash County caused the crash. Plaintiff amended the Complaint to add the North Carolina Department of Transportation ("NCDOT") as a Third-Party Defendant for negligent installation and maintenance of traffic control devices on Red Road.

NCDOT filed a motion in limine seeking to exclude any reference to or any evidence of subsequent remedial measures pursuant to North Carolina Rule of Evidence 407, including "recommendations for subsequent remedial measures." The trial court ruled that Plaintiff was "prohibited from mentioning [subsequent remedial measures] during jury selection or [the] case in chief," but reserved the issue for decision if the "matter [became] a direct issue" upon NCDOT's presentation of evidence.

At trial, NCDOT called Christopher Lewis ("Lewis"), an Assistant Division Traffic Engineer, about the placement of the stop sign. Lewis had visited the intersection where the crash occurred in December 2014, and again to make a 2016 post-accident report.[1] In portions of direct examination, Lewis testified as follows:

> [NCDOT]: And did you go to the intersection [in 2014] to look at the signage there?
>
> [Lewis]: I did.
>
> [NCDOT]: And what signage did you observe at the time?
>
> [Lewis]: . . . What I found was a typical intersection that you would find in a rural part of a county. . . . So, I didn't see an issue safety-wise when I went to the location. . . . [T]here wasn't a sight distance issue to the primary stop sign on the right-hand side.
>
> . . .
>
> [NCDOT]: . . . [In 2014, d]id you determine if there was any visibility issue with the right-hand stop sign?
>
> [Lewis]: I did not see any.
>
> [NCDOT]: And, therefore, you -- you did not make a decision to put any additional signage?
>
> [Lewis]: No, it -- it wasn't necessary. . . . That - - that's my job is to make sure that when I leave something, I leave it -- leave it in a safe manner. And I even for a minute questioned

---

[1] This post-accident report was Exhibit 37 at trial.

whether there was [a] visibility issue . . . . I would have instructed the sign erector while you're here go ahead and add a stop ahead sign.

[NCDOT]: So, you would not have instructed him?

[Lewis]: I mean, if -- if there were --

[NCDOT]: Oh.

[Lewis]: -- a visibility issue, I would have instructed him to do so, but *in this case there wasn't.*

. . .

[Lewis]: So, getting back to the stop sign, we want to put the stop sign in a location where you can see it from a distance off. We want to give you as much time as you can to perceive what it is and to be able to safely come to a stop. And when I looked at this intersection in 2014, maintenance-wise with a supplemental stop sign, that's great that it's there. I saw no reason to -- to take it out and having that it's been there and I have no history of it, my primary concern is that stop sign on the right-hand side. And -- and I left there feeling that it was safe based on the engineering judgment.

. . .

[NCDOT]: You've – you've heard the testimony by Mr. Marceau and the other experts with respect to their opinions about application of [the Manual on Uniform Traffic Control Devices]. Do you have any reasons to disagree with their opinions?

[Lewis]:     . . . And when I went to t[h]is location in 2014 prior to the accident, I left there with the impression that this is safe. I can see this stop sign. . . . So, do I disagree with what's been – what's been said? I can't think of anything I disagree with. . . .

[NCDOT]:     But I mean, they opined the intersection ahead sign should have been placed and the supplemental sign should have been protected. I mean, do you agree with that?

[Lewis]:     Could you say that again?

[NCDOT]:     Yes. They opined that the stop ahead sign should have been placed.

[Lewis]:     Again, I don't know the history behind it, so it's difficult for me to say what the reasons were for it being there to begin with.

[NCDOT]:     No, I mean, the stop ahead sign. They say that it should have been placed by NCDOT, the experts --

[Lewis]:     The stop -- the stop ahead sign?

[NCDOT]:     Correct.

[Lewis]:     I'm sorry. I thought you were referring to supplemental.

[NCDOT]:     Yeah.

[Lewis]:     *The stop ahead sign, no, it -- it doesn't – it's not necessary for it to be placed because the visibility is to that primary stop sign.* I have -- you know, but the time I saw the intersection, I had no reason to -- to add it.

. . .

[NCDOT]: They also opined about NCDOT -- they opined about the placement of the right-hand stop sign. That it -- the way it was placed it was closer to the woods, not as close to Red -- Red Road and *that created the visibility conspicuity issue.* Do you agree with that?

[Lewis]: *No.*

(Emphasis added).

When direct examination of Lewis concluded, Plaintiff requested, out of the presence of the jury, to be allowed to question Lewis with respect to Exhibit 37, which comported with the trial court's ruling regarding subsequent remedial measures evidence. Lewis prepared Exhibit 37 after the accident, and the report stated that the stop sign was "too far out" and needed to be "move[d] in closer" to the road "for better sight distance." Plaintiff sought to use that report to impeach Lewis's testimony on direct examination. After hearing arguments on the issue, the trial court allowed Plaintiff to proceed with cross-examination of Lewis, and to use Exhibit 37 in doing so, while noting and overruling NCDOT's standing objection.

On cross-examination, Lewis further testified as follows:

[Plaintiff]: How many times did you tell this jury that there was nothing wrong with that stop sign to the right?

[Lewis]: More than once.

[Plaintiff]: How many times did you estimate you told the

> jury there was nothing wrong with that stop sign to the right?

[Lewis]:     I don't recall how many times.

[Plaintiff]:   I had seven or eight. Is that about right?

[Lewis]:     I - - I don't recall. I would say that's fair.

[Plaintiff]:   How many times did you tell this jury there's not [a] visibility issue with that stop sign on the right?

[Lewis]:     Several times.

[Plaintiff]:   How many times did you tell that jury that you didn't see any reason that he didn't [see] that sign?

[Lewis]:     I don't know what the circumstances were in this crash. I could not find a reason, you know, why he wouldn't have seen the sign.

[Plaintiff]:   How many times did you tell the jury there was no sight distance issue in this case?

[Lewis]:     Several times.

Plaintiff then questioned Lewis regarding Exhibit 37. Lewis acknowledged Exhibit 37 referred to the stop sign at issue, he made the handwritten notations on Exhibit 37, and those notations were made after he went to the scene of the accident. According to Lewis, he wrote the following on Exhibit 37: "northbound stop sign too far out [on Red Road]"[2] (the commonly used name for the road); an underlined "Yes!"

---

[2] The phrase "on Red Road" does not appear on Exhibit 37, but Lewis confirmed that his notation "northbound stop sign too far out" referred to "on Red Road."

next to that first opinion; and "move in closer to State Road 1417 for better sight distance." In addition, Lewis testified he believed the stop sign was "too far out to the right." Lewis also acknowledged he knew about the handwritten notations on Exhibit 37 when he testified during his direct examination testimony.

The jury found both French and NCDOT negligent and awarded Plaintiff $800,000.00 in damages. NCDOT timely appeals.

## ANALYSIS

On appeal, NCDOT argues the trial court erred in admitting Exhibit 37 into evidence, and that Plaintiff's use of the exhibit in enlarged, poster form was misleading and prejudicial. Exhibit 37 is Lewis's 2016 post-accident report, which contains hand-written notations stating the stop sign was "too far out [on Red Road]" and should be "move[d] in closer to [Red Road] for better sight distance[.]" To support its argument of erroneous admission of the report, NCDOT argues (1) Exhibit 37 was inadmissible evidence of subsequent remedial measures pursuant to Rule 407 of the Rules of Evidence, and (2) the probative value of Exhibit 37, which the trial court admitted for impeachment, was substantially outweighed by the danger of unfair prejudice pursuant to Rule 403 of the Rules of Evidence. We analyze both arguments and also perform a Rule 401 analysis of whether Exhibit 37 constituted proper, relevant impeachment evidence.

### A. Rule 407

## 1. Standard of Review

First, we examine whether Exhibit 37 was a subsequent remedial measure susceptible to exclusion under Rule 407. Our precedent does not clearly provide the standard of review for Rule 407; however, an analysis of our past cases shows that de novo review has consistently been used. As a result, we review the trial court's Rule 407 determination de novo.

In general, appellate courts review a trial court's evidentiary rulings according to an abuse of discretion standard. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 141, 139 L. Ed. 2d 508 (1997) ("We have held that abuse of discretion is the proper standard of review of a district court's evidentiary rulings."); *see also Sloan v. Miller Bldg. Corp.*, 128 N.C. App. 37, 45, 493 S.E.2d 460, 465 (1997) (holding that "admission of [evidence] . . . [is] addressed to the sound discretion of the trial court and may be disturbed on appeal only where an abuse of such discretion is clearly shown"). Additionally, "[e]videntiary errors are harmless unless a defendant proves that absent the error a different result would have been reached at trial." *State v. Ferguson*, 145 N.C. App. 302, 307, 549 S.E.2d 889, 893 (2001).

However, in multiple cases, when ruling on issues involving Rule 407, we have considered the matter anew and substituted our own judgment regarding a trial court's evidentiary ruling involving Rule 407. In those cases, we applied de novo review, without explicitly saying so.

For example, the following review of the record took place in *Smith v. N.C. Dept. of Nat. Res. & Cmty. Dev.*:

> Finally, plaintiff contends the Commissioner erred in failing to admit evidence of subsequent remedial measures shown in exhibits number 9 through 18 and discussed in exhibit number 29. As plaintiff correctly points out, it is unclear from the transcript of the proceedings whether or not exhibit 29 was admitted into evidence. For the purposes of this argument, we will assume that it was not. Plaintiff argues the exhibits were admissible under Rules 407 and 803(8) of the North Carolina Rules of Evidence. According to Rule 407, evidence of subsequent remedial measures is not admissible to prove negligence or culpable conduct, but such evidence may be offered for other purposes such as 'proving ownership, control, or feasibility of precautionary measures, if those issues are controverted, or impeachment.' N.C.G.S. § 8C-1, Rule 407 (1992). Rule 803(8) provides that public records and reports are an exception to the hearsay rule. § 8C-1, Rule 803(8) (1992).
>
> Exhibits 9 through 18 are photographs of signs, railings and stairways constructed around the area of Beauty Falls after Richard Smith's death. Plaintiff argues they were admissible under Rule 407 because the State contested the feasibility of precautionary measures. *We disagree. . . .* [T]he park superintendent[] testified that the park could not be made "safe," but admitted that it could be made "safer" and mentioned several examples of possible precautionary measures. We find that the evidence was properly excluded under Rule 407, because the State did not challenge the feasibility of precautionary measures, nor did it contest ownership or control of the area.
>
> Alternatively, plaintiff argues the evidence serves to impeach the State's contentions that the area could not be made safe, claiming that the new railings and sign now render that area completely safe. We find this position to

be unsupported by the evidence. The fact that no accidents have occurred since the safety measures were put in place does not prove that accidents will not happen at Beauty Falls in the future. We believe the Commissioner correctly concluded that exhibits 9 through 18 were inadmissible.

*Smith v. N.C. Dept. of Nat. Res. & Cmty. Dev.*, 112 N.C. App. 739, 746, 436 S.E.2d 878, 883 (1993) (emphasis added).

We also performed a de novo review in *Benton v. Hillcrest Foods, Inc.*:

Plaintiffs concede that the instructions to security guards were created after the shootings in issue. However, plaintiffs argue that the instructions, which state that the security guards should lock the door in the event of a disturbance in the parking lot, show the feasibility of precautionary measures and would have impeached defendants' testimony that there was no reason to lock the front door of the restaurant which was open twenty-four hours a day.

A witness for defendant stated, 'There's no reason to lock the door.' However, testimony that there is no reason to lock the door does not address the feasibility of locking the door. Instead, the statement refers to the perceived lack of necessity to do so. Therefore, whether or not it would have been possible to lock the door was not controverted, and evidence that such a measure would have been feasible is not admissible under Rule 407.

*Benton v. Hillcrest Foods, Inc.*, 136 N.C. App. 42, 53, 524 S.E.2d 53, 61 (1999). Immediately after that treatment of Rule 407, we stated "[w]hether to exclude evidence *under Rule 403* is within the sound discretion of the trial court." *Id.* (emphasis added).

Further, in *Lane v. R.N. Rouse & Co.*, after explicitly stating that the standard of review concerning admission of evidence of similar circumstances is abuse of discretion, we did not mention that standard of review when examining a trial court's Rule 407 ruling:

> Finally, Rouse assigns error to the trial court's admission of measures taken by Rouse, immediately following decedent's death, to cover the floor openings with plywood.
>
> When, after an event, measures are taken which, if taken previously, would have made the event less likely to occur, evidence of the subsequent measures is not admissible to prove negligence or culpable conduct in connection with the event. This rule does not require the exclusion of evidence of subsequent measures when offered for another purpose, such as proving ownership, control, or feasibility of precautionary measures, if those issues are controverted, or impeachment. N.C. R. Evid. 407.
>
> Here, Rouse argued repeatedly that it had no control of the construction site on the day of the accident. Rouse's witnesses also questioned the feasibility of covering the floor openings. However, we agree with the trial court that evidence of Rouse's actions in placing covers over the openings immediately after decedent's fall was admissible as evidence of Rouse's control of the work site on the day of the accident and of the feasibility of taking that precautionary measure.

*Lane v. R.N. Rouse & Co.*, 135 N.C. App. 494, 498-99, 521 S.E.2d 137, 140 (1999) (alterations omitted).

In reviewing our precedent, we have performed de novo review of trial courts' Rule 407 rulings without expressly identifying the standard of review. We now

perform a de novo review of the Record to determine whether Plaintiff offered the evidence as a subsequent remedial measure, and whether the evidence was admissible.

**2. Subsequent Remedial Measures**

"According to Rule 407, evidence of subsequent remedial measures is not admissible to prove negligence or culpable conduct, but such evidence may be offered for other purposes such as 'proving ownership, control, or feasibility of precautionary measures, if those issues are controverted, or impeachment.'" *Smith*, 112 N.C. App. at 746, 436 S.E.2d at 883 (quoting N.C.G.S. § 8C-1, Rule 407 (1992)). This general exclusion of subsequent remedial measures stems from the rationale that "[p]recautions against the future cannot be considered as an admission of actionable negligence in the past." *McMillan v. Atlanta & C. Air Line Ry. Co.*, 172 N.C. 853, 855, 90 S.E. 683, 685 (1916). A post-accident report containing recommendations for improvements is excluded under Rule 407. *Smith*, 112 N.C. App. at 746-47, 436 S.E.2d at 883. Post-incident written notes containing instructions are also excluded under Rule 407. *Benton*, 136 N.C. App. at 53, 524 S.E.2d at 61.

After reviewing the Record and Lewis's testimony, we agree with the trial court's ruling that Lewis's notes in Exhibit 37 concerning the sign's placement ("stop sign too far out") and whether he believed the sign needed to be relocated ("move in closer to SR 1417 for better sight distance") qualified as subsequent remedial

measures excludable under Rule 407, unless an appropriate exception applied. *See Benton*, 136 N.C. App. at 53, 524 S.E.2d at 61 (holding that written instructions to security guards after a shooting were excluded under Rule 407). Lewis's notes in Exhibit 37 were made after the traffic collision at issue. In this post-accident report, Lewis made a professional recommendation to move the stop sign, which "would have made the event less likely to occur" if it had been made before the accident and in conjunction with actual movement of the sign. N.C.G.S § 8C-1, Rule 407 (2019). Generally, these notes and post-accident reports should be excluded under Rule 407. *Smith*, 112 N.C. App. at 746-47, 436 S.E.2d at 883.

However, Rule 407 instructs further that evidence of subsequent remedial measures may not serve as a bar to evidence introduced to impeach:

> When, after an event, measures are taken which, if taken previously, would have made the event less likely to occur, evidence of the subsequent measures is not admissible to prove negligence or culpable conduct in connection with the event. This rule *does not require the exclusion of evidence of subsequent measures when offered* for another purpose, such *as . . . impeachment.*

N.C.G.S § 8C-1, Rule 407 (2019) (emphasis added). If Plaintiff properly offered the notes in Lewis's post-accident report for impeachment purposes, Rule 407 does not prohibit the admission of Lewis's notes in his post-accident report and no longer applies. We examine whether Plaintiff properly offered Lewis's notes for impeachment purposes.

## B. Rule 401

### 1. Relevance

Next, we examine whether Lewis's testimony was offered for a proper, relevant purpose, to wit: impeachment. "The admissibility of evidence [under N.C.G.S. § 8C-1, Rule 401 (2017)] is governed by a threshold inquiry into its relevance. In order to be relevant, the evidence must have a logical tendency to prove any fact that is of consequence in the case being litigated." *State v. Holmes*, 263 N.C. App. 289, 302, 822 S.E.2d 708, 720 (2018), *review denied*, 372 N.C. 97, 824 S.E.2d 415 (2019). "Trial court rulings on relevancy technically are not discretionary." *Id.* "Whether evidence is relevant is a question of law . . . [and] we review the trial court's admission of the evidence *de novo*." *State v. Kirby*, 206 N.C. App. 446, 456, 697 S.E.2d 496, 503 (2010). Even though we review these rulings de novo, we give "great deference on appeal" to trial court rulings regarding whether evidence is relevant. *State v. Allen*, 828 S.E.2d 562, 570 (N.C. Ct. App. 2019), *appeal dismissed, review denied*, 373 N.C. 175, 833 S.E.2d 806 (2019).

Here, the trial court determined Exhibit 37 was relevant for impeachment purposes, and the deferential standard of Rule 401 informs our approach in reviewing the relevancy of evidence for impeachment under Rule 407. *State v. Stewart*, 231 N.C. App. 134, 139, 750 S.E.2d 875, 878 (2013). Lewis's notes concerning the sign's placement, and whether he believed the sign was in the safest place for visibility on

Red Road, had a logical tendency to prove the veracity of his testimony concerning whether the sign at issue in this case should have been placed in a different location. Lewis's notes also had a logical tendency to make his testimony more or less believable to the jury.

## 2. Impeachment Purposes

A longstanding principle within our jurisprudence provides that "[t]he primary purpose of impeachment is to reduce or discount the credibility of a witness for the purpose of inducing the jury to give less weight to his testimony in arriving at the ultimate facts in the case." *State v. Bell*, 249 N.C. 379, 381, 106 S.E.2d 495, 498 (1959) (quoting *State v. Nelson*, 200 N.C. 69, 72, 156 S.E. 154, 156 (1930)); *see also State. v. Shuler*, 841 S.E.2d 607, 610 (N.C. Ct. App. 2020). "Impeachment evidence has been defined as evidence used to undermine a witness's credibility, with *any* circumstance tending to show a defect in the witness's *perception, memory, narration or veracity* relevant to this purpose." *State v. Gettys*, 243 N.C. App. 590, 595, 777 S.E.2d 351, 356 (2015) (emphasis added) (quoting *State v. Allen*, 222 N.C. App. 707, 721, 731 S.E.2d 510, 520 (2012)).

The opposing party can impeach by offering evidence of that witness's prior inconsistent statements. *State v. Anderson*, 88 N.C. App. 545, 548, 364 S.E.2d 163, 165 (1988). Plaintiff concedes the inability to call Lewis as an adverse witness for the sole purpose of introducing Exhibit 37. Had NCDOT not called Lewis as a witness,

Exhibit 37 would not have been admissible. However, NCDOT chose to call Lewis as a witness, and we examine the Record for testimonial inconsistencies permitting Plaintiff to use Exhibit 37 for the purpose of undermining Lewis's credibility.

On direct examination, Lewis testified that when he went to the intersection "[he] didn't see an issue safety-wise . . . there wasn't a sight distance issue to the primary stop sign on the right-hand side." More specifically, he testified he did not see any visibility issues regarding the stop sign, the placement of the stop sign was safe, and he could see the stop sign. Lewis explicitly disagreed with the opinions of Marceau, Barrett, and Sutton, all retained experts who testified in the same capacity that the placement of the stop sign created a "visibility conspicuity issue."

Prior to Plaintiff's introduction of Exhibit 37 on cross-examination, Lewis confirmed he had already told the jury "several times" that "there was nothing wrong with that stop sign to the right," there was "no[] visibility issue with th[e] stop sign on the right," and that he "could not find a reason . . . why [French] wouldn't have seen the sign." This testimony directly conflicts with Lewis's notation on Exhibit 37, which states the stop sign was "too far out [on Red Road]" and should be "move[d] in closer to [Red Road] for better sight distance." The notations on Exhibit 37 directly conflict with Lewis's testimony on direct and cross-examinations and tend to discredit his testimonial account of his 2016 inspection. Exhibit 37 and the corresponding testimony on cross-examination were admissible impeachment evidence

notwithstanding the general prohibition of evidence of subsequent remedial measures. The trial court did not err in admitting Exhibit 37 for impeachment.

NCDOT asks us to rely on *Benton*, where we placed limits on a plaintiff's ability to cross-examine defense witnesses with evidence of subsequent remedial measures. *Benton*, 136 N.C. App. at 53, 524 S.E.2d at 61. There, a patron was shot and killed during an altercation at a restaurant, and an eyewitness for the defense testified, "[t]here's no reason to lock the door." *Id.* The plaintiff attempted to contradict this testimony by introducing evidence of written instructions, created after the incident, directing security guards to lock the door in case of disturbances in the parking lot. *Id.* at 52-53, 523 S.E.2d at 60-61. We affirmed the trial court's decision to exclude evidence of the written instructions to contradict the witness; the witness's testimony did not address the feasibility of locking the door, an uncontroverted issue, and instead referred only to his perceived lack of necessity of doing so during the incident. *Id.*

*Benton* is distinguishable from the present case, and NCDOT's reliance on *Benton* is misplaced. Our conclusion regarding Rule 407 in *Benton* turned on whether the parties controverted the feasibility of taking precautionary measures, which is another exception under Rule 407. *Id.* at 53, 524 S.E.2d at 61. In *Benton*, we only discussed impeachment in passing and in relation to proving feasibility. *Id.* The written instructions, which were adopted after the shooting, were not relevant to

"show a defect in the witness's perception, memory, narration or veracity" of an eyewitness account of the shooting. *Gettys*, 243 N.C. App. 590 at 595, 777 S.E.2d at 356. Unlike the evidence of subsequent remedial measures at issue in *Benton*, Exhibit 37 is relevant to show a defect in Lewis's perception, memory, and narration, as well as the veracity of his testimony, concerning the safety inspection he conducted following the accident. *See Benton*, 136 N.C. App. at 53, 524 S.E.2d at 61.

NCDOT also contends "[t]he impeachment exception applies when a party initiates the purported testimonial inconsistency and thereby tries to gain an unfair advantage by exploiting the exclusionary provision of Rule 407." To support this assertion, NCDOT cites cases in which evidence of subsequent remedial measures was admissible to impeach a witness who inaccurately described the condition at the time of the accident or asserted the condition was repaired before the accident. *See Tise v. Town of Thomasville*, 151 N.C. 281, 65 S.E 1007 (1909); *Mintz v. Atlantic Coast Line R. Co.*, 236 N.C. 109, 72 S.E.2d 38 (1952). NCDOT also cautions if we allow Plaintiff to impeach Lewis's testimony with a report that reflects a change in his "engineering judgment" based on new "available pertinent information," then the exception will swallow the rule.

While NCDOT cites cases demonstrating how trial courts apply the impeachment exception to combat patently false testimony, it fails to cite any authority limiting application of the impeachment exception to these exclusive

purposes. Adoption of such a narrow interpretation of the impeachment exception would actually impermissibly broaden the Rule 407 prohibition of evidence of subsequent remedial measures, which does not allow defendants in negligence cases to "avail themselves of the [prohibition on remedial measures evidence] for the purposes of preventing a fair and full disclosure of pertinent facts not tending to establish negligence." *Pearson v. Harris Clay Co.*, 162 N.C. 224, 226, 78 S.E. 73, 74 (1913). When the Record discloses that a defense witness, on direct examination, testifies about conditions prior to an accident or injury, which Lewis testified to in this case, it is proper on cross-examination to contradict that witness's assertion with evidence directly controverting the witness's testimony. *Jefferson v. City of Raleigh*, 194 N.C. 479, 482, 140 S.E. 76, 77 (1927); *see generally Tise*, 151 N.C. 281, 65 S.E. 1007.

Plaintiff's use of Exhibit 37 on cross-examination was proper, relevant impeachment—NCDOT called Lewis as a witness, and Exhibit 37 contradicted Lewis's testimony and undermined his credibility. Rule 407 does not exclude Exhibit 37 for such a use, despite the general prohibition of evidence of subsequent remedial measures. The impeachment exception to Rule 407 applies, and Plaintiff's impeachment of Lewis with his own report constituted relevant evidence. Next, we examine whether Rule 403 would prohibit the use of Exhibit 37, despite it being proper, relevant impeachment evidence excepted from Rule 407's general prohibition.

## C. Rule 403

NCDOT argues the trial court should have excluded Exhibit 37 because its probative value was substantially outweighed by the danger of unfair prejudice and misleading the jury. We disagree. The trial court did not abuse its discretion in allowing the evidence under Rule 403.

"Rule 403's balancing test mandates the exclusion of prejudicial or otherwise inapplicable evidence when 'its probative value is substantially outweighed' by its prejudicial or inapplicable nature." *State v. Alonzo*, 261 N.C. App. 51, 59, 819 S.E.2d 584, 590 (2018) *modified on other grounds*, 373 N.C. 437, 838 S.E.2d 354 (2020). "Relevant evidence 'may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury[.]'" *State v. Smith*, 263 N.C. App. 550, 566, 823 S.E.2d 678, 689 (2019) (quoting N.C.G.S. § 8C-1, Rule 403 (2019)). We note that "the balance under Rule 403 favors admissibility of probative evidence." *State v. Peterson*, 179 N.C. App. 437, 460, 634 S.E.2d 594, 612 (2006).

"We review a trial court's decision to exclude evidence under Rule 403 for abuse of discretion. An abuse of discretion results when 'the court's ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision.'" *State v. Triplett*, 368 N.C. 172, 178, 775 S.E.2d 805, 809 (2015) (quoting *State v. Whaley*, 362 N.C. 156, 160, 655 S.E.2d 388, 390 (2008)).

Exhibit 37 was highly probative to whether Lewis's testimony was credible concerning the stop sign's placement. Lewis prepared the report in Exhibit 37, but his testimony at trial contradicted what he wrote in it. We also note the proper purpose of the direct impeachment; Lewis was not collaterally attacked with a report he did not compose.

NCDOT argues that *Benton v. Hillcrest Foods, Inc.* should guide our analysis regarding Rule 403 balancing in the present case. *Benton*, 136 N.C. App. at 53, 524 S.E.2d at 61. In *Benton*, we reviewed a trial court's Rule 403 exclusion of evidence in the form of written instructions to restaurant security guards, given after a confrontation between patrons, to "lock the door in the event of a disturbance in the parking lot." *Id.* We held "that the proffered evidence [wa]s of slight probative value and present[ed] a danger that the jury would be unfairly prejudiced against [the] defendant for not having taken the remedial measure earlier." *Id.* Unlike the low probative value of post-confrontation written instructions to security guards in *Benton*, Lewis's 2016 inspection notes were highly probative, as they were evidence of his opinion concerning the safety and need for improvement of the stop sign's placement, and contradicted the opinion he later provided before the jury. The risk of unfair prejudice to NCDOT was low. Here, the trial court did not abuse its discretion.

**D. Limiting Instruction**

NCDOT also argues the trial court committed reversible error because it failed to issue a limiting instruction, after Plaintiff's closing argument, restricting Exhibit 37 to its proper scope. During closing argument, Plaintiff argued that all the evidence, including Exhibit 37 and Lewis's related testimony, proved NCDOT's negligence was the proximate cause of an accident that "killed a nice lady." According to NCDOT, Plaintiff also argued Lewis's testimony and opinions regarding the safety of the stop sign placement were "dishonest," "untruthful," and "could not be trusted."

NCDOT was entitled, *upon request*, to an instruction limiting the jury's consideration of Exhibit 37 to its proper scope. Rule 105 of the North Carolina Rules of Evidence provides:

> When evidence which is admissible as to one party or for one purpose but not admissible as to another party or for another purpose is admitted, the court, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly.

N.C.G.S. § 8C-1, Rule 105 (2019). "The admission of evidence which is competent for a restricted purpose without limiting instructions will not be held error in the absence of a request by the defendant for such limiting instructions." *State v. Love*, 152 N.C. App. 608, 617, 568 S.E.2d 320, 326 (2002). Additionally, "[counsel have] wide latitude in arguing their cases to the jury, and have the right to argue every phase of the case supported by the evidence, and to argue the law as well as the facts." *Jenkins v. Harvey C. Hines Co.*, 264 N.C. 83, 91, 141 S.E.2d 1, 6 (1965).

Although Plaintiff's reference to Exhibit 37 and Lewis's related testimony conceivably had the potential to have the jury consider the evidence for an improper purpose, NCDOT failed to request a limiting instruction. In light of impeachment evidence discrediting Lewis's testimony, Plaintiff had wide latitude to argue Lewis's testimony and opinions regarding the safety of the stop sign placement were "dishonest," "untruthful," and "could not be trusted."

The trial court did not commit reversible error by not issuing a limiting instruction, because NCDOT failed to request an instruction limiting the jury's consideration of Exhibit 37 to its proper scope.

## **CONCLUSION**

Exhibit 37 was a subsequent remedial measure under Rule 407, but fell into the exception in Rule 407 as impeachment evidence and was properly admitted under Rules 407 and 401. Exhibit 37 was relevant evidence contradicting Lewis's perception, memory, or narration, or the veracity of his testimony on direct examination, and the trial court did not abuse its discretion in concluding the probative value was not substantially outweighed by the danger of unfair prejudice. NCDOT failed to request a limiting instruction in accordance with Rule 105 concerning Exhibit 37, and Plaintiff was allowed to make arguments concerning Exhibit 37, upon its proper admission.

NO ERROR.

Judge DILLON concurs in result with separate opinion.

Judge TYSON concurs in part and dissents in part, with separate opinion.

No. COA19-498 – *Holland v. French.*

DILLON, Judge, concurring in result.

This matter involves a fatal car accident occurring at an intersection in 2016, where the driver at fault ran a stop sign. After the accident, the North Carolina Department of Transportation ("NCDOT") sent Mr. Lewis (one of its engineers) to the intersection to make a post-accident report. In his report, Mr. Lewis recommended that the NCDOT take remedial action to make the stop sign more obvious to approaching drivers.

At trial, Plaintiff called experts who testified that the NCDOT had been negligent in the placement of the stop sign prior to the accident.

During the NCDOT's case in defense, the NCDOT chose to call Mr. Lewis to refute Plaintiff's experts. The NCDOT's counsel elicited from Mr. Lewis his opinion that the NCDOT had not been negligent in locating the stop sign prior to the accident. Specifically, Mr. Lewis testified that he had visited the intersection in 2014, two years prior to the accident, and that, based on his 2014 visit, it was his opinion that the stop sign was in a safe location. During Plaintiff's cross-examination of Mr. Lewis, Plaintiff questioned him about his visit to the intersection in 2016, shortly after the accident. Over the NCDOT's objection, Plaintiff introduced Mr. Lewis' post-accident report into evidence to impeach his testimony.

The jury returned a verdict in favor of Plaintiff, finding the NCDOT negligent.

On appeal, the NCDOT argues that Mr. Lewis' post-accident report should not have been admitted, based on Rule 407 of our Rules of Evidence, which generally excludes evidence that the defendant took remedial measures *after* an accident to make its property safer. *See* N.C. Gen. Stat § 8C-1, Rule 407 (2016). Indeed, Rule 407 recognizes that actions by a property owner after an accident to make its property safer is *not* an admission that the owner had been negligent in keeping its property safe at the time of the accident. *Id.*

I concur with the result in this case that the trial court did not commit reversible error in admitting the report into evidence based on the reasoning below.

Mr. Lewis' report at issue contains this written notation:

> STOP SIGN TOO FAR OUT. MOVE IN CLOSER TO [THE INTERSECTION] FOR BETTER SIGHT DISTANCE.

This notation was circled. Outside this circled notation was written "YES!"

The above notation contains two different statements by Mr. Lewis, which I address separately.

The first statement – "STOP SIGN TOO FAR OUT" – could reasonably be interpreted as Mr. Lewis' opinion that the stop sign was not in a safe location at the time of the accident . . . that the sign was situated "too far" from the intersection. As such, I conclude that the statement was properly admitted for impeachment

purposes, irrespective of whether it falls within Rule 407.[3]  The statement could be interpreted as a direct contradiction of the opinion Mr. Lewis offered during his in-court testimony that the stop sign was not negligently placed.

It was the NCDOT who decided to call Mr. Lewis as a witness.  Accordingly, Plaintiff had the right to impeach Mr. Lewis regarding any testimony he gave on direct examination with out-of-court statements he had made to the contrary, including any such statements contained in his post-accident report.  Had the NCDOT not called Mr. Lewis, this first statement probably would not have come in to evidence.  Accordingly, the trial court correctly allowed this statement in to evidence.

The second statement in the report is Mr. Lewis' recommendation that the stop sign be "move[d] closer to [the intersection] for better sight distance[.]"  I agree with my colleagues that this second statement, standing alone, clearly falls within Rule 407.  However, unlike the first statement, this second statement does not contradict anything Mr. Lewis testified to during his direct testimony.  He never testified that he had *not* recommended the stop sign be moved after his 2016 visit.  Accordingly, I conclude the statement was inadmissible.

---

[3] It could be argued that this first statement, standing alone, falls outside of Rule 407 in that it does not suggest remedial action.  But it could be argued that the statement falls within Rule 407, since it is part of a report commissioned by the NCDOT which recommends that remedial action be taken.  However, even if the statement falls within Rule 407, it is still admissible, as Rule 407 allows evidence of remedial action to be admitted if properly offered for impeachment purposes.

However, any error in allowing the second statement into evidence was not prejudicial to the NCDOT. Admittedly, Mr. Lewis' recommendation that the stop sign should be moved to make it safer, though not an admission that the stop sign was not safe to begin with, does *suggest* to the jury that Mr. Lewis believed that the NCDOT had been negligent in its original placement of the stop sign. But, here, the jury already heard evidence suggesting that Mr. Lewis thought the stop sign was not in a safe location and that he thought it had been placed "too far" from the intersection. It is almost certain that, based on this first statement alone, the jury already assumed that Mr. Lewis thought remedial action was required. It is unlikely that the second statement – where he actually recommends remedial action – was crucial in swaying the jury to find the NCDOT negligent.

The NCDOT extensively cites to *Benton v. Hillcrest Foods, Inc.*, 136 N.C. App. 42, 524 S.E.2d 53 (1999) to support its position that the trial court committed reversible error. *Benton* is an instructive case on the nuances of the impeachment exception of the Rule 407 exclusion, but that case does not contradict my position here. In *Benton*, a restaurant patron's estate sued *the restaurant* for failing to maintain a safe environment after the decedent was fatally shot. *Id*. at 46, 524 S.E.2d at 57. After losing at trial, the estate appealed, arguing that the trial court incorrectly disallowed evidence that the restaurant had issued written instructions to its security guards, post-shooting, that the restaurant doors should be locked whenever trouble

was detected outside. *Id*. at 53, 524 S.E.2d at 61. Our Court affirmed, concluding that the written instructions were Rule 407 evidence and that the instructions did not contradict evidence offered by the restaurant that "there was no reason to lock the front door." *Id*. at 53, 524 S.E.2d at 61. In rejecting the estate's argument, Judge (future Justice) Timmons-Goodson, writing for our Court, noted that the restaurant's post-shooting instructions to lock the door when danger was detected outside would have only served as impeachment testimony had the restaurant's witness testified that *it was not feasible* to lock the door:

> However, testimony that there is no reason to lock the door does not address the feasibility of locking the door. Instead, the statement refers to the perceived lack of necessity to do so. Therefore, whether or not it would have been possible to lock the door was not controverted, and evidence that such a measure would have been feasible is not admissible under Rule 407.

*Id*. at 53, 524 S.E.2d at 61. If, however, the written instructions had contained a statement that the restaurant owners thought they had acted imprudently in not having a policy to lock the doors, perhaps *that* statement would have been admissible to impeach the suggestion by the restaurant's witness that the restaurant saw no need to lock the doors.

I conclude that the NCDOT received a fair trial, free from reversible error.

No. 19-498 – *Holland v. French*

TYSON, Judge, concurring in part and dissenting in part.

## I. Background

Shirley Davis Pendergrass died from injuries sustained during a car accident on 4 April 2016. Donnie George Holland qualified as executor for her estate ("Plaintiff"). He filed a wrongful death action against Richard Allan French ("French") for his alleged failure to stop at a stop sign at the intersection of Castalia and Red Roads in Nash County.

French asserted a third-party claim against the North Carolina Department of Transportation ("NCDOT"). Plaintiff was allowed to amend its complaint to bring direct causes of action against NCDOT for negligently installing traffic control devices on Red Road. NCDOT asserted sovereign immunity in its answer to Plaintiff's amended complaint.

Prior to trial, NCDOT also timely filed a motion *in limine* to prevent Plaintiff and French from introducing evidence of its subsequent remedial measures. Plaintiff asserted it was unaware of what witnesses NCDOT would call and who might be subject to cross-examination. The court preliminarily ruled counsel must refrain from commenting on the remedial evidence in front of the jury until the parties addressed the evidence.

At trial, relevant to NCDOT, Plaintiff introduced testimony of two engineers, Daren Marceau and Dr. Rollin Barrett. French presented one engineer, Mike Sutton.

NCDOT presented testimony of Christopher Lewis, traffic engineer; Johnnie Paul Hennings, accident reconstruction analyst; and Andy Brown, division traffic engineer. After a hearing outside of the jury's presence, the trial court ruled over NCDOT's objection Plaintiff would be allowed to cross-examine Lewis regarding an aerial drawing and notes thereon he had prepared after the accident. His notes stated the stop sign was too far out from and that it needed to be moved closer to the road for better sight distance. Plaintiff argued this evidence impeached Lewis' prior testimony.

The jury returned a verdict and found French and NCDOT were negligent and awarded $800,000 in damages. NCDOT appealed.

## II. Issue

NCDOT argues the trial court erred by allowing Plaintiff to impeach Lewis with Plaintiff's Exhibit 37 in violation of Rule 407. N.C. Gen. Stat. § 8C-1, Rule 407 (2019). NCDOT also argues the trial court abused its discretion and prejudicially erred by allowing this evidence to be admitted in violation of Rule 403. N.C. Gen. Stat. § 8C-1, Rule 403 (2019).

## III. Standards of Review

A trial court's evidentiary rulings are generally reviewed by appellate courts under an abuse of discretion standard. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 141, 139 L. Ed. 2d 508, 516 (1997) (citations omitted) ("We have held that abuse of discretion is the proper standard of review of a [trial] court's evidentiary rulings."); *see also*

*Sloan v. Miller Bldg. Corp.*, 128 N.C. App. 37, 45, 493 S.E.2d 460, 465 (1997) (holding that "admission of [evidence] . . . [is] addressed to the sound discretion of the trial court and may be disturbed on appeal only where an abuse of such discretion is clearly shown"). Additionally, regarding prejudice, "[e]videntiary errors are harmless unless a defendant proves that absent the error a different result would have been reached at trial." *State v. Ferguson*, 145 N.C. App. 302, 307, 549 S.E.2d 889, 893 (2001).

"Trial court rulings on relevancy technically are not discretionary." *Id.* "Whether evidence is relevant is a question of law . . . [and] we review the trial court's admission of the evidence *de novo.*" *State v. Kirby*, 206 N.C. App. 446, 456, 697 S.E.2d 496, 503 (2010); N.C. Gen. Stat. § 8C-1, Rule 401 (2019). Even though we review relevancy rulings *de novo,* we give the trial court rulings regarding whether evidence is relevant "great deference on appeal." *State v. Allen*, __ N.C. App. __, __, 828 S.E.2d 562, 570 (2019), *appeal dismissed, review denied*, 373 N.C. 175, 833 S.E.2d 806 (2019).

As the plurality opinion correctly notes: "We review a trial court's decision to exclude evidence under Rule 403 for abuse of discretion. An abuse of discretion results when 'the court's ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision.'" State v. Triplett, 368 N.C. 172, 178, 775 S.E.2d 805, 809 (2015) (quoting *State v. Whaley*, 362 N.C. 156, 160, 655 S.E.2d 388, 390 (2008)).

## IV. Jurisdiction

NCDOT asserted sovereign immunity to a direct action against the state in its answer to Plaintiff's amended complaint. As sovereign immunity precludes suits directly against the State and is jurisdictional unless expressly waived, this issue is threshold before reaching the merits of NCDOT's claims. In *Batts v. Batts*, 160 N.C. App. 554, 586 S.E.2d 550 (2003), *disc. rev. denied,* 358 N.C. 153, 592 S.E.2d 553 (2004), this Court addressed this issue under a similar factual scenario.

The plaintiff, Stacy Batts, was a passenger in a car operated by Shawan Batts. *Id.* at 555, 586 S.E.2d at 551-52. The complaint alleged a stop sign controlling Mr. Batts direction of travel was obstructed by tree limbs. *Id.* The complaint was filed against Mr. Batts and the Town of Elm City. *Id.* Mr. Batts filed a crossclaim against the Town of Elm City and a third-party complaint against NCDOT. *Id.* The plaintiff then obtained permission of the trial court to amend her complaint to add NCDOT as a defendant and to dismiss her claim against the Town of Elm City. *Id.* at 556, 586 S.E.2d at 552. The trial court denied NCDOT's motion to dismiss the plaintiff's complaint based on sovereign immunity. *Id.*

On appeal, NCDOT also contended proper jurisdiction of the plaintiff's claim was before the Industrial Commission pursuant to the Tort Claims Act. *Id.* at 557, 586 S.E.2d at 552-53. This Court affirmed the trial court's denial of NCDOT's motion to dismiss. *Id.* at 559, 586 S.E.2d at 554.

North Carolina Rule of Civil Procedure 14(c) provides that the State may be joined as a third-party defendant notwithstanding the provisions of the Tort Claims

Act. N.C. Gen. Stat. § 1A-1, Rule14(c) (2019). Rule 14(a) provides that a plaintiff may allege a claim against a third-party defendant arising of the transaction or occurrence that is the subject matter of the plaintiff's claim. N.C. Gen. Stat. § 1A-1, Rule14(a) (2019). N.C. Gen. Stat. § 143-291 (2019) indicates sovereign immunity does not prevent the State from being joined as a third-party defendant in wrongful death action. *See Teachy v. Coble Dairies, Inc.*, 306 N.C. 324, 332, 293 S.E.2d 182, 187 (1982) ("We recognize that actions for indemnification, as well as actions for contribution, are generally brought by means of a third-party complaint. Rule 14(c) does not limit the nature or character of third-party actions permissible against the State. We therefore hold that the State may be joined as a third-party defendant, whether in an action for contribution or in an action for indemnification, in the State courts.").

This Court concluded the plaintiff's amended complaint against NCDOT was proper.

> Under the clear language of Rule 14(a), once a third-party defendant is added to a lawsuit, a plaintiff may assert claims directly against the third-party defendant, subject only to the limitation that the claim arose out of the same transaction or occurrence as the plaintiff's original claim against the original defendant.
>
> The Tort Claims Act waives sovereign immunity. By the addition of Rule 14(c), the General Assembly created an exception to the general rule that claims against the State under the Tort Claims Act must be pursued before the Industrial Commission as to third-party claims. . . . By adding subsection (c) to Rule 14, the General Assembly waived the State's immunity to claims brought by a plaintiff under Rule 14(a), subject to the express

limitations contained therein.

*Batts*, 160 N.C. App.at 557, 586 S.E.2d at 552-553. Jurisdiction was proper in the superior court.

## V. <u>Analysis</u>

### A. Rule 407

We all agree the trial court correctly ruled Lewis' notes and recommendations in Exhibit 37 concerning the sign's placement ("stop sign too far out") and whether he believed the sign needed to be relocated ("move in closer to SR 1417 for better sight distance") qualified under Rule 407 as subsequent remedial recommendations and measures and were properly excluded unless an appropriate exception applies. N.C. Gen. Stat. § 8C-1, Rule 407; s*ee Benton v. Hillcrest Foods, Inc.*, 136 N.C. App. 42, 53, 524 S.E.2d 53, 61 (holding that written instructions to security guards after a shooting were excluded under Rule 407). The trial court properly ruled that Plaintiff was "prohibited from mentioning [subsequent remedial measures] during jury selection or [the] case in chief," but reserved the issue for decision if the "matter [became] a direct issue" upon NCDOT's presentation of evidence.

When measures are taken after an event, which if taken previously would have made the event less likely to occur, evidence of the subsequent measures is not admissible to prove negligence or culpable conduct in connection with the event. N.C. Gen. Stat. § 8C-1, Rule 407. "Precautions against the future cannot be considered as an admission of actionable negligence in the past." *McMillan v. Atlanta & C. Air Line*

*TYSON, J., concurring in part and dissenting in part*

*Ry. Co.*, 172 N.C. 853, 855, 90 S.E. 683, 685 (1916). A post-accident report containing recommendations for improvements or remediation is excluded under Rule 407. *Smith v. N.C. Dept. of Nat. Resources*, 112 N.C. App. 739, 746-47, 436 S.E.2d 878, 883 (1993). Post-incident written notes containing instructions are also excluded under Rule 407. *Benton*, 136 N.C. App. at 53, 524 S.E.2d at 61.

"This rule does not require the exclusion of evidence of subsequent measures when offered for another purpose, such as proving ownership, control, or feasibility of precautionary measures, if those issues are controverted, or impeachment." N.C. Gen. Stat. § 8C-1, Rule 407; *see Lane v. R.N. Rouse & Co.*, 135 N.C. App. 494, 498-99, 521 S.E.2d 137, 140 (1999).

It is undisputed Lewis' notes in Exhibit 37 were made during a required site visit and review after the fatal traffic accident at issue had occurred. Lewis made a professional observation and recommendation in this 2016 post-accident report to move the stop sign, which "would have made the event less likely to occur" if it had been made before the accident and in conjunction with actual movement of the sign. N.C. Gen. Stat. § 8C-1, Rule 407. NCDOT properly asserted and the trial court correctly ruled preliminarily Lewis' post-accident report should be excluded from evidence under Rule 407. *Id.; Smith*, 112 N.C. App. at 746-47, 436 S.E.2d at 883.

This correct ruling, together with NCDOT's continuing objections, shifted to Plaintiff the burden to show a basis to allow admission. Whether Plaintiff met this burden becomes the pivotal question before us. Lewis' direct testimony that the sign

was visible was not impeached. His post-accident statement could not be admitted on this basis. N.C. Gen. Stat. § 8C-1, Rule 407.

Under Rule 407 and the trial court's ruling, Plaintiff also concedes his inability to have called Lewis as an adverse witness for the sole purpose of introducing Exhibit 37, even though he was the author of the notes and comments on the exhibit. Had NCDOT not called Lewis as a witness, Exhibit 37 would not have been admissible under the trial court's ruling. *Id.*

As noted above, evidence of subsequent remedial measures, including post-incident written notes containing instructions, is not admissible to prove prior negligence or culpable conduct, but such evidence may be admitted by Plaintiff showing other purposes such as "proving ownership, control, or feasibility of precautionary measures, if those issues are controverted, or impeachment." *Id.*; *Benton*, 136 N.C. App. at 53, 524 S.E.2d at 61.

When a party is attempting under Rule 407 to introduce evidence of a subsequent remedial measure for impeachment, the party must make an offer of proof containing:

> [1.] What the witness will testify to if the judge permits the proponent to pursue the line of inquiry.
>
> [2.] The evidence is logically relevant to some issue other than the general question of negligence or fault.
>
> [3.] The issue the evidence relates to is disputed in the case.

Robert P. Mosteller et al., *North Carolina Evidentiary Foundations*, Ch. 8, § 8-7(B) (3d ed. 2014).

Here, Plaintiff failed to lay a foundation and did not introduce any evidence this information is logically relevant to some issue other than the general question of NCDOT's negligence or fault. If Plaintiff meets its burden, Exhibit 37 may be subject to be admitted under the exceptions listed in Rule 407. Additionally, each line of notation on Exhibit 37 asserted as admissible needs to be subjected to the above analysis prior to admission. *Id.*

NCDOT argues this Court's decision in *Benton* is dispositive to exclude Exhibit 37. In *Benton,* we limited a plaintiff's ability to cross-examine defense witnesses with evidence of subsequent remedial measures. *Benton*, 136 N.C. App. at 53, 524 S.E.2d at 61. A patron was shot and killed during an altercation at a restaurant. *Id.* An eyewitness for the defense had testified, "[t]here's no reason to lock the door." *Id.* Plaintiff attempted to undermine and impeach this testimony by introducing into evidence written instructions, created after the incident, which directed the restaurant's security guards to lock the door in case of disturbances occurring in the parking lot. *Id.* at 52-53, 523 S.E.2d at 60-61.

This Court affirmed the trial court's decision to exclude evidence of the written instructions to contradict the witness' testimony. We held the witness' testimony did not address the feasibility of locking the door, an uncontroverted issue, and instead

referred only to the witness' belief of the lack of necessity of doing so during the incident. *Id.*

More than two years had elapsed since Lewis' first visit to the rural site in 2014, the basis of his direct testimony, and again in late 2016 for the required post-accident visit. Plaintiff laid no foundation or showing that the conditions Lewis had observed in 2014 had not changed or were similar to those he observed after the accident in 2016. *Mintz v. Atlantic Coast Line R. Co.*, 236 N.C. 109, 72 S.E.2d 38 (1952); *Tise v. Town of Thomasville*, 151 N.C. 281, 65 S.E 1007 (1909).

Plaintiff failed to carry its burden by not offering how "[t]he evidence is logically relevant to some issue other than the general question of negligence or fault" in the face of NCDOT's motion *in limine* and continuing objection to admission and the trial court's prior ruling. Mosteller, *North Carolina Evidentiary Foundations*, § 8-7 (B). I vote to reverse the trial court's decision to allow cross-examination of Lewis based upon his 2016 post-accident review, recommendations, and the remedial actions taken. N.C. Gen. Stat. § 8C-1, Rule 407. I respectfully dissent.

### B. Rule 403

Even if Lewis' post-accident notes and recommendations were admissible under the impeachment exception to Rule 407, NCDOT argues the trial court should have excluded Exhibit 37 under Rule 403. NCDOT asserts the danger of unfair prejudice and misleading the jury substantially outweighed its probative value. This Court has held: "Rule 403's balancing test mandates the exclusion of prejudicial or

otherwise inapplicable evidence when 'its probative value is substantially outweighed' by its prejudicial or inapplicable nature." *State v. Alonzo*, 261 N.C. App. 51, 59, 819 S.E.2d 584, 590 (2018), *modified on other grounds*, 373 N.C. 437, 838 S.E.2d 354 (2020).

NCDOT urges this Court to overturn the trial court's decision to allow Plaintiff to impeach Lewis' testimony regarding conditions he observed in 2014 with a post-accident 2016 report that reflects a change in his "engineering judgment" based on new post-accident "available pertinent information." It argues that to affirm the trial court's application of the rule would allow the exceptions to swallow the overriding policy for the rule of exclusion to encourage remedial repairs.

NCDOT acknowledges the trial court's admission of evidence of remedial measures under the Rule 407 exceptions pursuant to Rule 403 is reviewed on appeal for abuse of discretion. See *Benton*, 136 N.C. App. at 53, 524 S.E.2d at 61 (holding whether to exclude evidence is within the sound discretion of the trial court and will not be disturbed "absent a showing that the ruling was so arbitrary that it could not have been the result of a reasoned decision").

NCDOT also argues the probative value was substantially outweighed by prejudice because by Plaintiff using a "blown-up poster" of Lewis' 2016 post-accident note, Plaintiff and French were allowed to "falsely" and aggressively cross-examine Lewis and to argue this properly excluded evidence in closing argument.

*TYSON, J., concurring in part and dissenting in part*

Plaintiff counters these arguments and cites a federal circuit court case as persuasive authority. In *Dollar v. Long Mfg., N.C., Inc.*, the plaintiff sought to introduce a warning letter from a witness to contradict his trial testimony about the safety of a backhoe when attached to a certain tractor. *Dollar v. Long Mfg., N.C., Inc.*, 561 F.2d 613, 618 (5th Cir. 1977). The federal court analyzed the Federal Rule of Evidence 403, holding:

> Rule 403 authorizes the exclusion of relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice, we do not think this situation called for its application. In the face of Saunders' testimony as to his present opinion of the safety of the backhoe when attached to a rollbar-equipped tractor, we do not think unfair prejudice to the defendant would have resulted from his having been confronted by his own letter warning of exposure to death by such use. Of course, "unfair prejudice" as used in Rule 403 is not to be equated with testimony simply adverse to the opposing party. Virtually all evidence is prejudicial or it isn't (sic) material. The prejudice must be "unfair."

*Id.*

I agree with NCDOT that presuming this line of questioning was permissible under the exceptions to Rule 407, "its probative value is substantially outweighed by its prejudicial or inapplicable nature" under Rule 403. N.C. Gen. Stat. § 8C-1, Rule 403. I also respectfully dissent from the plurality opinion's holding to the contrary.

VI. <u>Conclusion</u>

The trial court correct ruled that Rule 407's general prohibition of admission of evidence of subsequent remedial measures precludes admission of Exhibit 37.

12

*TYSON, J., concurring in part and dissenting in part*

NCDOT lodged a continuing objection to this questioning. Plaintiff failed to lay a required foundation to carry his burden to show Lewis' post-accident 2016 notes, recommendation, and report did not remain within the exclusion of Rule 407.

We all agree Exhibit 37 was prepared post-accident, recommended and documented subsequent remedial measures implemented under Rule 407. Plaintiff failed to carry its burden to show Lewis' post-accident 2016 report fell into an exception in Rule 407 as impeachment evidence to be properly admitted. In the alternative, the probative value of Lewis' statements was substantially outweighed by the danger of unfair prejudice under Rule 403. NCDOT is entitled to a new trial. I concur in part and respectfully dissent in part.